STATE OF NORTH CAROLINA v. HAROLD THOMAS YANCEY

No. 819SC1351

(Filed 6 July 1982)

1. **Criminal Law § 66.3— denial of motion to suppress identification testimony—denial of motion for lineup—no error**

   Under G.S. 15A-281, the trial court did not err in denying defendant's motion to suppress the identification testimony of a witness and in denying defendant's motion for a lineup since the court found that a nontestimonial procedure would not have constituted a material aid in determining whether the defendant committed the offense and since there was substantial evidence identifying the defendant which did not depend on the witness's ability to recognize him at trial.

**2. Constitutional Law § 48— denial of request to replace attorney—no error**

There was no error in the denial of defendant's request to replace his attorney where the fault the defendant found with his attorney was in regard to trial tactics and did not rise to such a level that they should destroy the relationship between attorney and client. Nor did the court err in failing to advise the defendant of his right to represent himself after the court had refused to appoint new counsel.

**3. Larceny § 8— instructions—guilty if one of four items taken from house—no deprival of unanimous verdict**

In a prosecution for felonious breaking or entering and felonious larceny where the evidence showed that four items were taken from a house, the court did not deprive the defendant of a unanimous jury verdict when he instructed the jury that they could find the defendant guilty if they found he had taken any one of the items.

**4. Criminal Law §§ 86.1, 97— testimony to impeach defendant and corroborate witness—no right to further rebuttal in defendant**

Where a witness for the State testified that she had seen the defendant in court on Monday, defendant testified that he had not been in court on Monday, and after defendant rested, the State called a deputy sheriff who testified he had brought the defendant into the courtroom on Monday, the court did not err in failing to allow the defendant to put on evidence to show he was not in the courtroom and to contradict the testimony of the deputy sheriff since the testimony of the sheriff was offered to impeach the testimony of the defendant and to corroborate the testimony of the State's witness and was not new evidence which would have created in defendant the right to further rebuttal under G.S. 15A-1226.

**5. Jury § 2— special venire summoned by sheriff—sheriff suitable**

In a prosecution for felonious breaking or entering and felonious larceny where, before the jury was selected, the panel was exhausted and the court ordered the sheriff pursuant to G.S. 9-11(a) to summon five persons to report as supplemental jurors, there was no merit to defendant's contention that the sheriff was not suitable because (1) it was a criminal case in which several deputy sheriffs were testifying; (2) there was evidence in the record that the defendant believed the sheriff was harassing him and seeking to connect him with additional charges; and (3) there was a speculative possibility that the sheriff might have been related to the victim since they shared the same last name.

APPEAL by defendant from *Hobgood (Robert H.), Judge.* Judgment entered 7 August 1981 in Superior Court, GRANVILLE County. Heard in the Court of Appeals 28 May 1982.

The defendant was tried for felonious breaking or entering and felonious larceny. Prior to the commencement of the trial the defendant moved that John Pike, his court-appointed attorney, be

removed. The defendant stated to the court that this attorney had failed to have his appearance bond reduced, refused to get a lineup for him, and did not object to the identification testimony of Elizabeth Currin at the preliminary hearing. The court found without further evidence that Mr. Pike had proven himself to be competent in criminal trials in Granville County and demonstrated excellence in the defense of his clients, that the defendant had stated no basis in fact to establish that Mr. Pike had not prepared an adequate defense, that the defendant's first complaint in regard to his attorney was on a Friday before his case was calendared for trial on Monday, and the court was of the opinion the motion by the defendant to remove his attorney was a dilatory tactic. This motion was denied.

The defendant made a motion that the identification testimony of Elizabeth Currin be suppressed because his request for a nontestimonial identification procedure pursuant to G.S. 15A-281 had not been granted. The district attorney made a statement that the State would not rely on the testimony of any one witness to establish the identity of the defendant as the perpetrator of the crime. The court found that the results of a nontestimonial identification procedure would not constitute a material aid in determining whether the defendant committed the offense and denied the motion to suppress. The court also denied a motion by the defendant that he be given a nontestimonial identification procedure.

Before the jury was selected, the panel was exhausted and the court ordered the sheriff pursuant to G.S. 9-11(a) to summon five persons to report as supplemental jurors "without using the jury list, but using his best judgment and acting with impartiality to obtain persons of intelligence, courage and good moral character." The defendant objected to the special venire and moved for a mistrial. A hearing was conducted after the jury was selected but before they were impaneled. The sheriff testified that he did not attempt to get a list from the clerk of superior court or the register of deeds, but attempted to get people that were readily available and could come on short notice. He testified that so far as he knew he summoned persons who were of good character and respected members of the community. The court made findings of fact in accordance with the evidence ad-

duced at the *voir dire* hearing, overruled the objection to the special panel selected and denied the motion for mistrial.

At the trial the evidence for the State showed that on 24 June 1981, William Currin owned a house on Route 1, Oxford, North Carolina, but had been living in his daughter's home for a year. Elizabeth Currin testified that she is the sister-in-law of William Currin; that at approximately 12:45 p.m. on 24 June 1981, she passed the house of William Currin in her automobile; that at that time, she observed a white Ford with the trunk open parked in front of the house; that she saw a tall black male with a bushy Afro hairstyle and mustache wearing a light blue shirt step out of a ditch and place an object in the trunk of the vehicle; that she recorded the license number which was VWH-131; that she observed this man for approximately two minutes from a distance of from 10 to 12 feet; that she then continued toward highway 96; that she stopped before entering highway 96 and the automobile she had seen at her brother-in-law's house stopped beside her and she had a chance to observe the driver at a distance of approximately five feet; that after she entered highway 96, the vehicle passed her; she called the Sheriff's Office, gave them the information she had and asked that they investigate. She identified the defendant as the person she saw at her brother-in-law's house.

William Currin testified that he went to his house on 24 June 1981 to determine if anything had been taken. The glass on the carport door had been broken, the house ransacked, and a stereo, class ring, more than a dollar's worth of pennies, and two silver candleholders were missing. He also identified his checkbook which had been in his home and which he had given no one permission to take. He testified he had not given the defendant permission to enter his home or take anything from it. Mr. Currin's son-in-law testified he had checked the house at 8:00 a.m. on 23 June 1981 and found everything in order.

The State introduced evidence through the testimony of several officers that on 24 June 1981 Detective David Smith of the Granville County Sheriff's Department took a statement from Elizabeth Currin. He checked on the license number she gave him and found that the records showed the automobile with that license plate was owned by Melody Roach of Roxboro. Steve Clayton, a detective with the City of Roxboro Police Department,

went to the home of Melody Roach and the defendant drove the automobile into her yard while Officer Clayton was there. The defendant told him he had come from Oxford. Officer Clayton searched the vehicle and found nothing except less than 10 pennies. At approximately 7:45 p.m. on 24 June 1981 Dale Bullock served a warrant on the defendant charging him with breaking or entering and larceny from the house of Mr. Currin. Defendant threw the warrant on the ground and said he knew "that white bitch got my license number and he said that is the reason that this is happening." Officers Bullock and Clayton heard the defendant make this statement.

The defendant agreed to go to the Magistrate's Office and drove Melody Roach's automobile to the office followed by the officers. On the way to the Magistrate's Office, the defendant passed the home of Rancher Preddy and Mr. Preddy saw some papers thrown from the automobile. Mr. Preddy motioned to a police vehicle following the defendant and a policeman retrieved the papers which included checks and a card with the name "William Currin" on them.

Defendant testified that he did not break into or take anything from William Currin's house. He testified he did not throw anything from the automobile as he was being followed by the officers. He had other witnesses who corroborated his testimony as to his whereabouts on 24 June 1981 and provided him with an alibi.

The defendant was found not guilty of felonious breaking or entering and guilty of misdemeanor larceny. He appealed from the imposition of a prison sentence of two years.

*Attorney General Edmisten, by Assistant Attorney General Robert R. Reilly, for the State.*

*Appellate Defender Adam Stein, by Assistant Appellate Defender Marc D. Towler, for defendant appellant.*

WEBB, Judge.

[1] The defendant's first assignment of error is to the court's denial of his motion to suppress the identification testimony of Elizabeth Currin and his motion for a lineup. G.S. 15A-281 provides:

"A person arrested for or charged with an offense punishable by imprisonment for more than one year may request that nontestimonial identification procedures be conducted upon himself. If it appears that the results of specific nontestimonial identification procedures will be of material aid in determining whether the defendant committed the offense, the judge to whom the request was directed must order the State to conduct the identification procedures."

We can find no cases interpreting this section of the statute. The superior court found that a nontestimonial procedure would not have constituted a material aid in determining whether the defendant committed the offense in denying his motions to suppress the identification testimony of Elizabeth Currin and for a nontestimonial identification procedure. We do not believe the court committed error in this ruling. There was substantial evidence identifying the defendant which did not depend on Mrs. Currin's ability to recognize him at the trial. Officer Clayton testified the defendant told him he was driving the automobile of Melody Roach at the time the evidence showed it was used in the break-in. Two officers testified that they heard the defendant say that he knew that "white bitch got my license number" after Mrs. Currin had testified she took the license number of the person who was at Mr. Currin's house. There was evidence that the defendant threw from Melody Roach's automobile checks and a card that had been in Mr. Currin's house. We do not believe that with this evidence the results of a lineup could weaken Elizabeth Currin's identification testimony. For that reason we hold the court was not in error in holding that a nontestimonial identification procedure would not have been a material aid in determining whether the defendant committed the offense.

[2] In his second assignment of error the defendant contends it was error for the court not to replace his attorney and not to advise the defendant that he could represent himself. The defendant argues that his counsel's failure to get a lineup for him, his failure to object to Elizabeth Currin's identification testimony at the preliminary hearing, his failure to get his bond reduced and his failure to visit him in jail had made relations so bad between them that the defendant's counsel could not be effective. *See State v. Thacker*, 301 N.C. 348, 271 S.E. 2d 252 (1980). The defendant says this contention is confirmed by the record which shows

there were stormy scenes between Mr. Pike and the defendant at trial. We believe the fault the defendant found with his attorney was in regard to trial tactics. We do not believe they rise to such a level that they should destroy the relationship between attorney and client.

We comment that the defendant was represented at the trial by John Pike. Defendant was tried for two felonies. The evidence was substantial that the defendant was guilty of both charges and he could have been sentenced to 20 years in prison if the jury had so found. While being represented by Mr. Pike, in whom the defendant expressed no confidence, he was found guilty only of a misdemeanor for which he could receive a sentence of two years. Mr. Pike must have done something right.

The defendant also argues it was error for the court not to advise the defendant of his right to represent himself after the court had refused to appoint new counsel for him. We believe that to hold this was reversible error, we would have to overrule *State v. Cole,* 293 N.C. 328, 237 S.E. 2d 814 (1977), which we cannot do. The defendant's second assignment of error is overruled.

[3] The defendant next assigns error to the charge. The State's evidence showed that four items were taken from the house of William Currin. The court instructed the jury that they could find the defendant guilty if they found he had taken any one of the items. The defendant contends this deprived the defendant of a unanimous jury verdict because some of the jurors could have found the defendant guilty of taking one of the items and the other jurors could have found him guilty of taking another item. We believe we are bound by *State v. Hall,* 305 N.C. 77, 286 S.E. 2d 552 (1982), to overrule this assignment of error.

[4] In his fourth assignment of error the defendant contends that he should have been allowed to put on surrebuttal evidence. Mrs. Currin testified that she had seen the defendant in court on Monday. Defendant testified he had not been in court on Monday. After defendant rested, the State called as a witness Deputy Sheriff Marion Grissom who testified he had brought the defendant into the courtroom on Monday. The defendant's attorney then made a motion that he be allowed to put on evidence to show he was not in the courtroom and to contradict the testimony of Mr. Grissom. G.S. 15A-1226(a) provides:

State v. Yancey

"Each party has the right to introduce rebuttal evidence concerning matters elicited in the evidence in chief of another party. The judge may permit a party to offer new evidence during rebuttal which could have been offered in the party's case in chief or during a previous rebuttal, but if new evidence is allowed, the other party must be permitted further rebuttal."

The defendant, relying on *State v. Thompson*, 19 N.C. App. 693, 200 S.E. 2d 208 (1973), argues that the testimony of Mr. Grissom was new evidence which gave him the right to put on further rebuttal evidence. We do not believe *Thompson* governs this case. In that case after the jury had begun their deliberations, they returned to the courtroom and asked a question as to the interior design of the passenger compartment of a truck. The court allowed the State to reopen its case and put on testimony as to the interior of the truck. There had been no previous evidence on this feature of the case. The defendant was not allowed to put on evidence as to the design of this part of the truck, and this Court found this was error. In the instant case, unlike *Thompson*, the State did not present evidence tending primarily to add to its original case but offered the testimony of Mr. Grissom to impeach the testimony of the defendant and corroborate the testimony of Elizabeth Currin. This would not be new evidence and the defendant would not have the right to further rebuttal under G.S. 15A-1226(a). *See* 1 Stansbury's N.C. Evidence § 22 (Brandis rev. 1973) for a definition of new evidence. The defendant's fourth assignment of error is overruled.

[5]  In his last assignment of error the defendant contends the special venire was improperly drawn. G.S. 9-11(a) provides:

"If necessary, the court may, without using the jury list, order the sheriff to summon from day to day additional jurors to supplement the original venire. Jurors so summoned shall have the same qualifications and be subject to the same challenges as jurors selected for the regular jury list. If the presiding judge finds that service of summons by the sheriff is not suitable because of his direct or indirect interest in the action to be tried, the judge may appoint some suitable person in place of the sheriff to summon supplemental jurors. The clerk of superior court shall furnish the

register of deeds the names of those additional jurors who are so summoned and who report for jury service."

The defendant contends the court should have found the sheriff was not suitable because of his interest in the action to be tried. He says this is so because (1) it was a criminal case in which several deputy sheriffs were testifying; (2) there was evidence in the record that the defendant believed the sheriff was harassing him and seeking to connect him with additional charges; (3) and there was a possibility that the sheriff, Arthur Currin, might have been related to the victim, William Currin. We do not believe any of these factors would support a finding that the sheriff is not suitable because of his direct or indirect interest in the case. Deputy sheriffs testify in many cases. We do not believe the legislature intended to disqualify sheriffs from summoning extra jurors in all of them. If this were so, we believe the legislature would have designated some other official to summon extra jurors. We also believe that if the sheriff were disqualified from summoning jurors in every case in which a defendant feels the sheriff is harassing him, there would be few if any sheriffs qualified to summon a juror. As to the contention that the sheriff has the same last name as the victim so that they might be related and if they are related the sheriff might have such an interest in the case that he is disqualified, we believe this is too speculative to merit consideration. The defendant's last assignment of error is overruled.

No error.

Judges CLARK and WHICHARD concur.