STATE OF NORTH CAROLINA v. BRIAN ALLEN BARNARD

No. 237A96

(Filed 9 May 1997)

**1. Jury § 109 (NCI4th)— capital murder—jury selection— black defendant, white victim—individual voir dire denied**

In a capital prosecution (life sentence) of a black defendant for the first-degree murder of a white victim, the trial court did not abuse its discretion by denying defendant's motion for individual *voir dire* and sequestration of jurors during *voir dire*. Defendant offered no convincing reason explaining how the denial of his motion may have harmed him and his arguments are similar to those in cases in which relief has consistently been denied.

**Am Jur 2d, Jury § 198.**

STATE v. BARNARD

[346 N.C. 95 (1997)]

**2. Jury § 26 (NCI4th)— first-degree murder—jury selection—jurors not summoned or not responding—contact by sheriff—no error**

The trial court did not err in a first-degree murder prosecution by denying defendant's challenge to the jury panel where defense counsel learned prior to trial that the sheriff possessed a list of some of the jurors drawn for the session who had not been served with a summons or who had not made a proper return of summons, defendant filed a motion to continue on the basis that there might be insufficient prospective jurors for purposes of selecting an entire panel and alternates, and the clerk's office and the Sheriff's Department attempted to contact some of the prospective jurors who had not returned their notification of service to find out if they had received service. The record supports the trial judge's finding that no evidence exists to support a conclusion of impropriety or that any juror was included or excluded systematically.

**Am Jur 2d, Jury §§ 155 et seq.**

**3. Jury § 26 (NCI4th)— first-degree murder—prospective jurors failing to acknowledge summons—contact by sheriff—no error**

There was no error in a first-degree murder prosecution where two or three prospective jurors were contacted by the sheriff from a list he had received from the clerk's office or the district attorney's office, the sheriff asked the persons contacted if they had received their summons and if they intended to appear in court, and the sheriff and the chief deputy testified at trial. The communication was pretrial and clerical, assuring that the prospective jurors had been served with the summons. A juror was not likely to give the sheriff's testimony undue deference based on this minimal contact.

**Am Jur 2d, Jury §§ 155 et seq.**

**4. Criminal Law § 248 (NCI4th Rev.)— first-degree murder—supplemental jury list—no continuance—no prejudice**

The trial court did not violate a first-degree murder defendant's constitutional rights by denying his motion to continue where defendant filed a motion for sixty days notice of jury poll; that motion was granted; one hundred and fifty prospective jurors were drawn on 2 August for the session at which defend-

ant was scheduled to be tried; the court ordered on 19 September that one hundred fifty additional prospective jurors be drawn; and defendant contends that he had insufficient time in which to investigate the background of these additional jurors. Other than a generalized complaint about lack of time to investigate the additional prospective jurors, defendant made no showing to the trial court of prejudice if a continuance was not granted. Furthermore, defendant did not file the motion to continue until 11 October 1995 after learning on 19 September that the additional jurors would be drawn.

**Am Jur 2d, Jury §§ 126-130.**

5. **Criminal Law § 378 (NCI4th Rev.)— first-degree murder— defense argument on reasonable doubt—reference to moral certainty—instruction to take legal definitions from court—no error**

There was no error in a first-degree murder prosecution where defendant requested specific instructions on burden of proof and reasonable doubt; the trial judge stated outside the presence of the jury that he would allow defense counsel to give this definition of reasonable doubt but cautioned that he would instruct the jury that it should take the law from the court if an objection was made; defense counsel referred to "moral certainty" during closing argument; the prosecutor objected; and the court instructed the jury to listen to counsel but to take the definition of the law from the court. The comment by the court was not an expression of opinion related to any question of fact; assuming error, it cannot be concluded that the comment was prejudicial, given the overwhelming evidence presented against defendant. Additionally, the trial court had warned defense counsel of the consequences of using the proffered definition of "reasonable doubt."

**Am Jur 2d, Trial §§ 284, 288, 1385.**

6. **Criminal Law § 470 (NCI4th Rev.)— first-degree murder— prosecutor's argument—comment on discovery—fair comment on evidence**

The trial court did not err in a first-degree murder prosecution by not intervening *ex mero motu* during the prosecutor's closing argument to the jury where defendant contended that the prosecutor erroneously stated the law of discovery and used it to disparage defense counsel, but the fact that the State showed

defendant all of its evidence was apparent from the evidence and testimony presented at trial.

**Am Jur 2d, Trial §§ 632-639.**

**7. Criminal Law § 470 (NCI4th Rev.)— first-degree murder— prosecutor's argument—characterization of testimony as confession**

The trial court did not err in a first-degree murder prosecution by not intervening *ex mero motu* in the prosecutor's closing argument where defendant contended that the prosecutor improperly characterized the testimony of a witness as a confession, but the statement was fully supported by the evidence and is an appropriate characterization of the testimony.

**Am Jur 2d, Trial §§ 632-639.**

**8. Criminal Law § 442 (NCI4th Rev.)— first-degree murder— prosecutor's argument—defendant's potential to rob or murder jury**

There was no error requiring *ex mero motu* intervention by the trial judge in the prosecutor's closing argument where the prosecutor indicated that defendant might rob or murder the jury if released. While the argument is not approved, it does not rise to the level of gross impropriety requiring intervention, and the evidence of defendant's guilt was so overwhelming that it is unlikely that the jury would have reached a different result but for the improper remarks.

**Am Jur 2d, Trial §§ 632-639.**

**9. Appeal and Error § 506 (NCI4th)— first-degree murder— motion to dismiss felony murder and lying in wait denied— conviction on premeditation and deliberation and lying in wait—no prejudice**

There was no prejudicial error where the trial court denied defendant's motion to dismiss charges of first-degree felony murder and first-degree murder by lying in wait and the jury found defendant guilty on the basis of premeditation and deliberation. Defendants are convicted of crimes, not theories.

**Am Jur 2d, Appellate Review §§ 531-613, 690-698.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Downs, J.,

at the 16 October 1995 Criminal Session of Superior Court, Madison County, upon a jury verdict of guilty of first-degree murder. Heard in the Supreme Court 13 December 1996.

*Michael F. Easley, Attorney General, by Joan Herre Erwin, Assistant Attorney General, for the State.*

*Durryl D. Taylor for defendant-appellant.*

PARKER, Justice.

Defendant was tried capitally on an indictment charging him with the first-degree murder of Bruce Dixon Williams ("victim"). The jury returned a verdict finding defendant guilty of first-degree murder upon theories of (i) malice, premeditation, and deliberation and (ii) lying in wait. In accordance with the jury's recommendation after a capital sentencing proceeding, the trial court entered judgment sentencing defendant to life imprisonment. For the reasons discussed herein, we conclude that defendant's trial was free from prejudicial error and uphold his conviction and sentence.

On 15 November 1994 the victim was shot to death on a back road in Madison County, North Carolina. The State's evidence tended to show that on 14 November at approximately 7:30 p.m., Sterling Lee Dula, nicknamed "Jodie"; Shane Wilson; and the victim drove to the victim's mother's house. Jodie had with him his .25-caliber pistol. The group took some guns and jewelry belonging to the victim's stepfather. The weapons included shotguns, a pistol, and an assault rifle.

The group then went to the home of Bobby Duane Goforth ("Duane") to ask for his assistance in selling the weapons. After dropping Shane off, Duane, Jodie, and the victim drove to Asheville, North Carolina. At approximately 11:00 p.m. they went into a game room and met defendant, nicknamed "Sniper," and several other people. Duane knew defendant and knew that he and the others were members of the "Crip Rolling 60's gang."

The victim, Duane, defendant, and others went to an apartment complex to sell the weapons. Some time after the group entered an apartment to show the guns, there was a knock at the door; everyone picked up guns and went outside. A person identified as "Don" allegedly picked up the assault weapon and stole it. The other guns were put in the trunk of Jodie's car.

STATE v. BARNARD

[346 N.C. 95 (1997)]

Duane and defendant said that they were going to get the assault weapon back from Don. Duane borrowed Jodie's .25-caliber pistol, and defendant borrowed the .25-caliber pistol taken from the victim's stepfather. While Duane and defendant supposedly looked for the thief, Jodie and the victim went to another apartment and sold one of the stolen shotguns.

Defendant asked Duane if he wanted to rob Jodie and the victim. Defendant explained to Duane that if defendant killed one of them, he would obtain the gang ranking of "OG," which stands for "original gangster." Duane protested, and defendant stated, "let's just rob them then cause we'll get these guns." Defendant told Duane to get the men to a place where defendant could get the guns from them.

The victim and Jodie returned to the apartment complex where they had earlier left defendant and Duane. Defendant and Duane gave the borrowed weapons back. Defendant told Jodie and the victim that he knew where the thief, Don, "hid out." Defendant, Duane, Jodie, the victim, and two other men then got into Jodie's car and headed toward Madison County. Duane told Jodie where to drive. Someone told Jodie to pull the car over so they could smoke some marijuana, and everyone got out of the car. Jodie then went back and sat in the front seat of the car.

The victim began shooting his gun into the woods. Defendant walked over to the car window and asked Jodie for his .25-caliber pistol. After getting the pistol from Jodie, defendant walked behind the victim, pointed the gun at the victim's head, and pulled the trigger. Defendant was about three feet from the victim when he shot him. Jodie jumped out of the car, and defendant then pointed the gun at Jodie. The gun jammed, and Jodie was able to run back to the car and drive away.

Defendant presented evidence suggesting that Jodie shot the victim.

[1] Defendant first contends the trial court erred in denying his motion for individual *voir dire* and sequestration of jurors during *voir dire*. Defendant is black, and the victim was white. Defendant maintains that individual *voir dire* was necessary to explore the sensitive issues of bias and racial prejudice as well as to prohibit the education of prospective jurors as to the method of questioning employed by counsel on these sensitive issues.

STATE v. BARNARD

[346 N.C. 95 (1997)]

Whether to grant individual *voir dire* of prospective jurors rests in the sound discretion of the trial court, and this ruling will not be disturbed on appeal absent a showing of abuse of discretion. *State v. Sexton*, 336 N.C. 321, 349, 444 S.E.2d 879, 895, *cert. denied*, 513 U.S. 1006, 130 L. Ed. 2d 429 (1994). Defendant has offered no convincing reason explaining how the denial of his motion may have harmed him. Defendant concedes that his arguments are similar to those in cases in which we have consistently denied relief on this basis. *See, e.g., State v. Conaway*, 339 N.C. 487, 453 S.E.2d 824, *cert. denied*, — U.S. —, 133 L. Ed. 2d 153 (1995); *State v. Reese*, 319 N.C. 110, 353 S.E.2d 352 (1987); *State v. Wilson*, 313 N.C. 516, 330 S.E.2d 450 (1985). After careful consideration, we decline to depart from our prior holdings on this issue and overrule this assignment of error.

[2] Defendant next argues that the trial court erred by denying his motion challenging the jury panel. Prior to defendant's trial, defense counsel learned that Sheriff James D. Brown possessed a list of some of the jurors drawn for the 16 October 1995 session. The list contained names, addresses, phone numbers, and other information on prospective jurors who had not been served with a summons for jury duty or who had not made a proper return of his or her summons. Apparently the list was being used to contact prospective jurors to determine if they intended to be at the hearing of this matter. Defendant contends that the list did not include every person who was not served or who had not responded to his or her summons and that prospective jurors were being systematically excluded.

N.C.G.S. § 9-10 requires the register of deeds, within three days after receipt of the numbers drawn for jury duty, to deliver the list of prospective jurors to the sheriff, who shall summon the persons named for jury duty. In the present case the clerk's office assisted the sheriff by mailing the summons to the prospective jurors. Close to the time of this trial, many of the people summoned had not sent back a notification of service.

On 11 October 1995 defense counsel filed a motion to continue on the basis that there might be insufficient prospective jurors for purposes of selecting an entire panel and alternates. The clerk's office and the Sheriff's Department attempted to contact some of the prospective jurors who had not returned their notification of service to find out if they had received service and, if not, to effect service. Prospective jurors Earl Wise and Yvonne Briggs and the brother of prospective juror Jason Murray were contacted by Sheriff Brown. Mr.

STATE v. BARNARD

[346 N.C. 95 (1997)]

Wise ultimately served as a juror in this case. Sheriff Brown as well as Chief Deputy Dal Peek testified at defendant's trial.

Defendant makes two arguments regarding the jury selection in this case. Defendant first argues that preparing and using a list selecting some prospective jurors to contact to assure their attendance and excluding others "raises a suspicion of impropriety." Defendant also argues that a personal telephone call from the sheriff, who is a prosecution witness, to assure the appearance of prospective jurors, is "unconstitutional, improper, and unethical."

After a pretrial hearing on this matter, Judge Downs found that "no evidence exists in support of any of the allegations made pursuant to this motion that leads the Court to the conclusion that there was any impropriety in the selection or the drawing of the jury according to the law and, further, that any juror was included or excluded from service systematically."

We conclude that the record supports the trial court's finding. In response to a motion to continue filed by defense counsel, the clerk's office and the Sheriff's Department attempted to contact prospective jurors who had not returned their notification of service to find out if they had received service and, if not, to effect service. These individuals were asked if they had received their summons and if they intended to appear in court. These facts do not, in our view, create the potential for suspicion of impropriety in the jury-selection process.

[3] The remaining issue is whether the pretrial contact by Sheriff Brown with prospective jurors was prejudicial to defendant. A sheriff is not disqualified from summoning supplemental jurors because he or a member of the sheriff's office is testifying in the case. N.C.G.S. § 9-11(a) provides:

> If necessary, the court may, without using the jury list, order the sheriff to summon from day to day additional jurors to supplement the original venire. Jurors so summoned shall have the same qualifications and be subject to the same challenges as jurors selected for the regular jury list. If the presiding judge finds that service of summons by the sheriff is not suitable because of his direct or indirect interest in the action to be tried, the judge may appoint some suitable person in place of the sheriff to summon supplemental jurors. The clerk of superior court shall furnish the register of deeds the names of those additional jurors who are so summoned and who report for jury service.

N.C.G.S. § 9-11(a) (1986). In *State v. Yancey*, 58 N.C. App. 52, 60, 293 S.E.2d 298, 303 (1982), the Court of Appeals held that testimony by a person in the sheriff's office does not disqualify the sheriff from summoning supplemental jurors to hear the matter. The Court of Appeals stated: "Deputy sheriffs testify in many cases. We do not believe the legislature intended to disqualify sheriffs from summoning extra jurors in all of them. If this were so, we believe the legislature would have designated some other official to summon extra jurors." *Id.* We similarly conclude that the mere fact that the sheriff and the chief deputy were testifying in the instant case did not preclude members of the department from contacting jurors who failed to acknowledge their service of the summons.

Two or three prospective jurors were contacted by the sheriff himself from a list he had received from either the clerk of court's office or the district attorney's office. The sheriff merely asked the persons contacted if they had received their summons and if they intended to appear in court. The communication was pretrial and simply a clerical one assuring that the prospective jurors had been served with the summons. Based on this minimal contact, a juror was not likely to give the sheriff's testimony undue deference. This assignment of error is overruled.

[4] Defendant next contends the trial court violated his constitutional rights by denying his motion to continue. On 31 July 1995 defendant filed a "Motion for Sixty Days Notice of Jury Poll Prior to Trial." Judge Downs stated in an order filed 2 August 1995 that relief should be granted defendant and ordered that the Clerk of Superior Court of Madison County "provide to the Defendant and the District Attorney[ ] the names and addresses of jurors selected for the October 16, 1995, session of Madison County Superior Court as soon as the same have been pulled and compiled." One hundred fifty prospective jurors were drawn 2 August 1995 for the session at which defendant was scheduled to be tried. On 19 September 1995 the court ordered one hundred fifty additional prospective jurors drawn. Defendant contends that he had insufficient time in which to investigate adequately the background of these additional jurors in preparation for *voir dire* and the effective exercise of his peremptory challenges. Specifically, defendant stated in his motion that, "although the Court is authorized to direct selection of supplemental jurors at any time, it defeats the Defendant's purpose for request for adequate time to investigate the background of jurors and places an unfair burden on the defendant in preparing and defending this first

degree murder case." Defendant stated in his motion that he "has had less than thirty days notice as to the names and addresses of the one hundred fifty jurors drawn 19 September 1995, and has not had sufficient time to do an adequate investigation."

A motion for continuance is generally addressed to the discretion of the trial judge and will not be disturbed on appeal absent a showing of abuse of that discretion. *State v. Stager*, 329 N.C. 278, 318, 406 S.E.2d 876, 899 (1991). "If the motion raises a constitutional issue, the trial court's action involves a question of law which is fully reviewable upon appeal." *Id.* "The denial of a motion to continue, even when the motion raises a constitutional issue, is grounds for a new trial only upon a showing by the defendant that the denial was erroneous and also that his case was prejudiced as a result of the error." *State v. Branch*, 306 N.C. 101, 104, 291 S.E.2d 653, 656 (1982).

Other than a generalized complaint about lack of time to investigate the additional prospective jurors, defendant made no showing to the trial court of prejudice to his case if a continuance was not granted. Furthermore, defense counsel learned on 19 September 1995 that additional jurors would be drawn, but did not file the motion to continue until 11 October 1995. Accordingly, defendant cannot show that his case was prejudiced by the trial court's denial of this motion.

[5] Defendant next contends the trial court improperly expressed an opinion in the presence of the jury on the veracity of defense counsel's legal argument as to reasonable doubt. N.C.G.S. § 15A-1222 provides: "The judge may not express during any stage of the trial[] any opinion in the presence of the jury on any question of fact to be decided by the jury." N.C.G.S. § 15A-1222 (1988).

Prior to closing arguments defendant filed a motion requesting specific jury instructions as to burden of proof and reasonable doubt. Specifically, defendant requested the following instruction:

The Defendant had entered a plea of "not guilty." The fact that he had been indicted is no evidence of guilt. Under our system of justice, when a defendant pleads "not guilty," he is not required to prove his innocence; he is presumed to be innocent. The State must prove to you that the defendant is guilty beyond a reasonable doubt.

A reasonable doubt is a doubt based on reason and common sense, arising out of some or all of the evidence that has been presented, or lack of [or] insufficiency of the evidence, as the case

**STATE v. BARNARD**

[346 N.C. 95 (1997)]

may be. Proof beyond a reasonable doubt is proof that fully satisfies or entirely convinces or satisfies you to a moral certainty of the defendant's guilt.

In response to this motion, the trial judge stated, outside the presence of the jury, that he would allow defense counsel to give this definition of reasonable doubt but cautioned that if an objection was made, he would instruct the jury that it should take the law from the court and not from defense counsel.

Defense counsel stated during his closing argument that "reasonable doubt" has been defined as "the state of a case which after the entire comparison and consideration of all the evidence leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction to a moral certainty of the truth of the charge." The prosecutor objected to the use of the term "moral certainty." At this point the trial court instructed the jury as follows:

Members of the jury, you will not take the definition of the law from counsel in his arguments. You will take the definition as to any aspect of the law in this case from the Court. You can listen to the argument, but don't take that definition as the one you'll be guided by.

Defendant argues that the trial court "improperly expressed an opinion on the veracity of the legal argument as to reasonable doubt proffered by defense counsel." Defendant further argues that this comment "improperly interrupted defense counsel," "interfered with his ability to effectively communicate the concept of reasonable doubt to the jury" and negatively affected defense counsel's credibility with the jury.

We first conclude that the comment by the court was not an expression of an opinion related to any question of fact and thus did not violate N.C.G.S. § 15A-1222. *See State v. Campbell*, 340 N.C. 612, 628, 460 S.E.2d 144, 152-53 (1995), *cert. denied*, —— U.S. ——, 133 L. Ed. 2d 871 (1996). The trial court did not comment on any question of fact in this case but rather properly cautioned the jury that it should listen to its instructions on the law.

Whether defendant was deprived of a fair trial by the trial court's remarks must be determined by what was said and its probable effect upon the jury in light of all existing circumstances. *See State v. Faircloth*, 297 N.C. 388, 392, 255 S.E.2d 366, 369 (1979). Defendant must show that he was prejudiced by the court's remark in order to

receive a new trial. *See State v. Howard*, 320 N.C. 718, 723, 360 S.E.2d 790, 793 (1987). Assuming error *arguendo*, given the overwhelming evidence presented against defendant in this case, we cannot conclude that this comment by the judge was prejudicial. *See State v. Burke*, 342 N.C. 113, 463 S.E.2d 212 (1995). In addition, the trial court forewarned defense counsel, out of the jury's presence, of the consequences of using the proffered definition of "reasonable doubt." This assignment of error is overruled.

[6] Defendant also contends the trial court erred in not intervening *ex mero motu* during the prosecutor's closing argument to the jury. Defendant contends that the prosecutor erroneously stated the law of discovery and used it to disparage defense counsel, improperly characterized the testimony of witness Goforth as a confession to murder and robbery, suggested that the defendant might rob or murder a member of the jury if he were released from jail, and engaged in "other improper argument."

As defendant failed to object to any of these arguments at trial, they are reviewable only to determine whether they were so grossly improper that the trial court erred by failing to intervene *ex mero motu* to correct the errors. *See Sexton*, 336 N.C. at 349, 444 S.E.2d at 895. "[T]he impropriety of the argument must be gross indeed in order for this Court to hold that a trial judge abused his discretion in not recognizing and correcting *ex mero motu* an argument which defense counsel apparently did not believe was prejudicial when he heard it." *State v. Johnson*, 298 N.C. 355, 369, 259 S.E.2d 752, 761 (1979).

Defendant first maintains that the prosecutor erroneously stated the law of discovery and used it to disparage defense counsel. During his closing argument the prosecutor stated:

> I couldn't help but think . . . as these two fine attorneys talked with you and made their presentations to you that it would have been nice if [the victim] had had a lawyer the morning of the 15th of November, wouldn't it. Somebody to write out a big, long, flowery speech begging for his life. That would have been nice, wouldn't it? Someone to get together all the State's evidence and review it for a year so that they could fine [sic] some chink or cranny in it to come here and argue to you about. You've heard about how the State shows the defendant all their evidence. We talked about it and showed it to them twice I guess.

The fact that the State showed defendant all of its evidence was apparent from the evidence and testimony presented at trial. This statement was a fair comment on the evidence before the jury. Moreover, defendant fails to show how this comment about discovery prejudiced him.

[7] Defendant next complains that the prosecutor improperly characterized the testimony of witness Goforth as a confession to murder and robbery. The prosecutor stated the following:

> [W]hy would Duane Goforth get up here, say what he said unless it was true? Now, you think about that. We've heard all this oh, he had so much to gain by getting up here and telling a lie. Oh, there was just so much that he could help himself do by getting up here and telling a lie, but you know what he did. He got up here and he confessed to attempted armed robbery and under our law he confessed to first degree felony murder.
>
> . . . [D]oes a person lie to cause themselves to be guilty of first degree murder and to confess to first degree murder. Now, if he got up here and said, Lord, no, I didn't have nothing to do with none of this. I didn't have anything to do with it. It was just this and I was over there, you might have some cause for concern, but he confessed to you attempted armed robbery and murder and there will come a time when a jury will set [sic] here and deal with him and that jury will hear what he says from right here. Now, he's got lawyers that you saw back there and he knows that. You think his lawyers that were pointed out by the defense are going to let him get up here and confess to two crimes like that if it's a lie. Use your common sense.

We conclude that this statement by the prosecutor is fully supported by the evidence and is an appropriate characterization of Goforth's testimony.

[8] Defendant also complains that the prosecutor indicated that defendant "might rob or murder the jury if he were released from jail." The prosecutor stated:

> Maybe you believe that this defendant is a choir boy and that the members of the Crips gang, Rolling 60's, are just choir boys that go around singing 60's songs. . . . Maybe you believe this is just an innocent thing and these are all innocent boys and that they always walk around with their neckties on and their hair brushed and they don't wear these gang rags, their color. Maybe you

believe that. If you do, turn him loose. We'll open the door of the jail and send him back to Asheville. Maybe you'll run into him over there, that Sniper, Cin, and Twinkle. Maybe they'll sing you some of these 60's songs. Maybe they'll rob you. Maybe they'll murder you. That's for you to decide.

While we do not approve of the prosecutor's remarks suggesting that defendant might harm members of the jury if he were released from jail, *see State v. Zuniga*, 320 N.C. 233, 257, 357 S.E.2d 898, 914, *cert. denied*, 484 U.S. 959, 98 L. Ed. 2d 384 (1987), the remarks do not rise to the level of such gross impropriety as to have required *ex mero motu* action by the trial judge. Furthermore, the evidence of defendant's guilt was so overwhelming that it is unlikely that the jury would have reached a different result but for the improper remarks. Therefore, any impropriety in the remarks was not prejudicial.

As to defendant's argument that the prosecutor engaged in "other improper argument," after reviewing the transcript, we conclude that the prosecutor's closing arguments were not so grossly improper as to require the trial court to intervene *ex mero motu*.

[9] Defendant next contends the trial court erred by denying his motion to dismiss the first-degree felony murder charge and by submitting to the jury the issue of first-degree felony murder.

Assuming *arguendo* that there was insufficient evidence to submit murder to the jury on the theory of felony murder, defendant cannot show prejudice since the jury did not convict defendant pursuant to this theory. *See State v. Price*, 344 N.C. 583, 476 S.E.2d 317 (1996); *State v. Olson*, 330 N.C. 557, 566, 411 S.E.2d 592, 596 (1992); *State v. Green*, 321 N.C. 594, 606, 365 S.E.2d 587, 594, *cert. denied*, 488 U.S. 900, 102 L. Ed. 2d 235 (1988). Accordingly, this assignment of error is overruled.

Defendant similarly contends the trial court erred by denying his motion to dismiss the charge of first-degree murder by lying in wait and by submitting to the jury the issue of first-degree murder by lying in wait.

Again, even assuming error, defendant could not have been prejudiced since the special verdict form shows that the jury found defendant guilty on the basis of premeditation and deliberation as well as of lying in wait. Defendants are convicted of crimes, not theories. *State v. Wilson*, 345 N.C. 119, 478 S.E.2d 507 (1996). "[T]he verdict cannot be disturbed if the evidence supports a conviction based

on premeditation and deliberation." *State v. McLemore*, 343 N.C. 240, 249, 470 S.E.2d 2, 7 (1996). This assignment of error is overruled.

For the foregoing reasons we conclude that defendant received a fair trial free from prejudicial error.

NO ERROR.