STATE OF NORTH CAROLINA v. GARY ALLEN TRULL

No. 205A97

(Filed 31 December 1998)

**1. Criminal Law § 75 (NCI4th Rev.)— motion for change of venue—calendering—denial of continuance—constitutional rights not violated**

Defendant's constitutional rights were not violated by the district attorney's calendaring of defendant's change-of-venue motion in a capital case and the trial court's denial of defendant's motion to continue where defendant was given notice of the district attorney's intention to call the change-of-venue motion, and defendant argued only that the preparation efforts of one of his attorneys had been focused on another case that week and that his private investigator was not available to testify, but defendant was represented by two attorneys at the hearing, and the district attorney agreed to stipulate to the investigator's surveys.

**2. Constitutional Law § 343 (NCI4th)— pretrial unrecorded bench conference—absence of defendant—constitutional rights not violated**

Defendant's state constitutional right to be present at all stages of his capital trial was not violated by an unrecorded bench conference held outside his presence at the conclusion of a hearing on defendant's motion for change of venue since the constitutional right does not arise before the trial begins, and the hearing had been completed and the trial court had made its ruling at the time of the unrecorded conference.

**3. Criminal Law § 76 (NCI4th Rev.)— denial of venue change—pretrial publicity—inability to receive fair trial**

The trial court did not err by denying defendant's motion for a change of venue where only three of the twelve seated jurors indicated that they had read or heard about defendant's case; all three stated unequivocally that they had not formed an opinion about the case, could set aside any information, and could be fair and impartial jurors; the only seated juror to whom defendant objected had had no pretrial exposure to the case; and in light of the totality of the circumstances, a reasonable likelihood did not exist that pretrial publicity prevented defendant from receiving a fair trial in the county.

**4. Jury § 111 (NCI4th)— jury selection—denial of individual voir dire**

The trial court did not err in denying defendant's motion for individual *voir dire* of prospective jurors on the ground that the collective *voir dire* exposed jurors who sat on defendant's jury to statements of other prospective jurors that they could not be fair and impartial as the result of pretrial publicity where defendant failed to show in what manner collective *voir dire* tainted the jurors who were seated; the parties were careful not to elicit specific information or opinions in the presence of other prospective jurors; and on several occasions, the trial court did in fact permit both sides to conduct individual *voir dire* to protect against the prejudice defendant now claims occurred in his case.

**5. Jury § 206 (NCI4th)— friendship with sheriff—denial of challenge for cause**

The trial court did not err in the denial of defendant's challenge for cause of a prospective juror in this capital trial based on her friendship with the sheriff where the sheriff was not a witness in the case; the sheriff and the prospective juror had discussed a personal problem of the juror, but the sheriff had never mentioned anything about defendant's case to the juror, and the juror had not heard anything concerning the sheriff's interest in or opinion about the case from other people; and the juror's responses indicated that she could remain a fair and impartial juror, could follow the law concerning the burden of proof and the presumption of innocence, and could consider both sentencing options.

**6. Jury § 202 (NCI4th)— challenge for cause—pretrial publicity—ability to render fair verdict**

The trial court did not err by denying defendant's challenge for cause of a prospective juror when defense counsel asked "based on what you may have heard, do you feel like you could put all that behind you and not be influenced in your first duty to render a verdict of guilt or innocence, and the second, if necessary, to go on and return a sentence recommendation?" and the juror responded, "I don't feel like it would bother me." Defendant did not ask any follow-up questions to clarify what the juror meant by "feel," and defendant cannot now complain that the juror, following a common speech pattern in the English language, responded using the same verb used in the question.

**7. Jury § 203 (NCI4th)— challenge for cause—burden of proof—ability to vote for life imprisonment—opinion about defendant's guilt—ability to be fair and impartial**

The trial court did not err in denying defendant's challenge for cause of a prospective juror because, when read in its entirety, the *voir dire* of the prospective juror does not demonstrate that she was unable to give defendant a fair and impartial trial where (1) her negative response to a double question constituted an unequivocal statement that she would not require defendant to prove anything and that she would require the State to carry its burden; (2) her response of "I don't really know about that" to a question as to whether it would be difficult for her to vote for life imprisonment for a person convicted of first-degree murder was not an expression of her inability to recommend a life sentence; and (3) although she stated that she had read about and heard opinions expressed about defendant's case, she also stated that she had not formed any opinions herself.

**8. Evidence and Witnesses § 1695 (NCI4th)— photographs of murder victim's body—decomposition and maggots**

The trial court did not err by admitting eight photographs that show a murder victim's body in an advanced state of decomposition with maggot infestation where the photographs assisted in illustrating the testimony of the forensic entomologist, an SBI agent, and the forensic pathologist. Nor did the trial court abuse its discretion under N.C.G.S. § 15A-1233(a) by permitting the jurors to reexamine the photographs in the courtroom during their deliberations.

**9. Evidence and Witnesses §§ 672, 716, 2873 (NCI4th)— prosecutor's questions—objection sustained—similar testimony—no injection of personal opinions**

Defendant was not prejudiced by the prosecutor's examination of a witness about "suspicious activity" by defendant where his first objection to an improper question was sustained, and defendant lost the benefit of his second objection to a question concerning other incidents of "suspicious activity" by defendant where the witness testified about such activity both before and after this objection. Further, the prosecutor's characterization of defendant's activities as "suspicious" did not impermissibly inject his personal opinions.

**10. Homicide § 225 (NCI4th)— first-degree murder—defendant as perpetrator—sufficiency of evidence**

The State's evidence was sufficient to permit the jury to find that defendant was the perpetrator of a first-degree murder where it tended to show that on the morning of the victim's disappearance, defendant was the only other person in the apartment complex where the victim lived; defendant's sperm was found inside the victim's vagina; a nylon strap identical to the piece of one found by the victim's body was discovered in defendant's truck; defendant is left-handed and the fatal wounds on the victim's neck indicate that they were inflicted by a left-handed person; and, according to expert testimony, the perpetrator tied the victim to a tree in the woods, had sexual intercourse with her in the woods, and the fatal wounds were inflicted where the body was found.

**11. Homicide § 253 (NCI4th)— first-degree murder—premeditation and deliberation—sufficiency of evidence**

The State's evidence in this first-degree murder prosecution was sufficient for the jury to find that defendant acted with premeditation and deliberation where it tended to show that there was no provocation by the victim; defendant abducted the victim from her apartment, took her to the woods, tied her to a tree, raped her, and inflicted three neck wounds that severed her carotid artery and caused her death; defendant then left the victim in the woods, where her body decomposed and became infected with maggots; and upon hearing others in the victim's apartment, defendant went in, asked some questions, and proceeded to place his fingerprints throughout her apartment, potentially destroying evidence.

**12. Homicide § 282 (NCI4th)— felony murder—intercourse against victim's will—rape and killing as continuous transaction**

There was sufficient evidence that defendant and the victim had intercourse against the victim's will and that the rape and killing occurred pursuant to a continuous transaction so as to support defendant's conviction of felony murder where it tended to show that defendant abducted the victim from her apartment, took her to the woods, and tied her to a tree; the intercourse occurred in the woods where the victim's body was found; defendant's sperm was found inside the victim's vagina; and defendant failed to present any evidence that the sex was consensual.

**13. Homicide § 552 (NCI4th)— first-degree murder—second-degree instruction not required**

The State presented positive and uncontroverted evidence of premeditation and deliberation in this prosecution for first-degree murder so that the trial court was not required to instruct the jury on the lesser-included offense of second-degree murder where the State's evidence tended to show that defendant abducted the victim from her apartment, took her to the woods, tied her to a tree, stabbed the victim while she was tied to the tree, and later returned to the victim's apartment where he feigned ignorance and attempted to destroy evidence.

**14. Kidnapping and Felonious Restraint § 20 (NCI4th)— first-degree kidnapping—unlawful removal—purpose of rape—sufficiency of evidence**

The State's evidence was sufficient for the jury to find that defendant unlawfully removed the victim from one place to another without her consent for the purpose of committing first-degree rape so as to support his conviction of first-degree kidnapping where it tended to show that the victim was a responsible, dedicated employee who was scheduled to teach a computer class at 9:00 a.m. but did not show up for work; when the victim's mother and a friend went to the victim's apartment, the victim's car was where it had been parked earlier in the day; the door casing around a closet behind the front door to the apartment was damaged as though the door had been banged against the casing; when the victim's body was thereafter found in the woods, the victim's clothing was not the type she would wear

to work and she was not wearing any undergarments; and in his statements to officers, defendant said he did not know the victim, he had seen her leaving and entering her apartment, and he had spoken to her in passing one or two times, but defendant's semen was found in the victim's vagina. This evidence supports the inference that defendant forced his way into the victim's apartment, forced her to dress hurriedly, forced her out of the apartment and into his truck, and then drove to the woods where he raped and murdered her.

**15. Rape and Allied Offenses § 90 (NCI4th)— first-degree rape—nonconsensual intercourse—serious bodily injury— sufficiency of evidence**

The State's evidence was sufficient for the jury to find that defendant had vaginal intercourse with the victim without her consent and that he inflicted serious personal injury upon her so as to support his conviction of first-degree rape where the evidence tended to show that defendant abducted the victim from her apartment and took her to the woods; defendant had vaginal intercourse with the victim in the woods; and defendant inflicted three neck wounds on the victim with a knife that caused her death.

**16. Criminal Law § 472 (NCI4th Rev.)— first-degree murder— prosecutor's closing argument—misstatements of law— absence of prejudice—error cured by instructions**

Even if the prosecutor's closing argument in this first-degree murder case concerning the presumption of malice and intent to kill included misstatements of law, defendant was not prejudiced since he offered no evidence of self-defense or of a killing in the heat of passion that would negate malice, and he offered no evidence that would tend to negate the element of intent to kill. Further, any prejudice to defendant from the alleged misstatements of law was cured by the trial court's proper instructions to the jury regarding the elements of first-degree murder, including malice and intent.

**17. Criminal Law § 433 (NCI4th Rev.)— prosecutor's closing argument—not comment on defendant's failure to testify**

The prosecutor's comment during closing argument in a capital trial concerning defendant's attacks on the victim and the State's witnesses, "It's the shotgun approach. Hide your defendant, hide all the evidence that incriminates him and the sinister

spin," was not an improper comment on defendant's decision not to testify but was simply a response to and rebuttal of defense counsel's claims made during closing argument.

**18. Criminal Law § 1366 (NCI4th Rev.)— capital sentencing— (e)(5) aggravating circumstance—submission for rape and kidnapping**

The trial court did not err in submitting the (e)(5) aggravating circumstance to the jury twice in a capital sentencing proceeding, once for rape and once for kidnapping, where the State presented distinct evidence that defendant committed both rape and kidnapping against the victim during the course of the capital felony. N.C.G.S. § 15A-2000(e)(5).

**19. Criminal Law § 439 (NCI4th Rev.)— capital sentencing— prosecutor's closing argument—reference to defendant as predator**

The prosecutor's reference to defendant as a "predator" during closing argument in a capital sentencing proceeding was not so grossly improper as to require the trial court to intervene *ex mero motu.*

**20. Criminal Law § 449 (NCI4th Rev.)— capital sentencing— prosecutor's closing argument—cry by victim and State for death penalty**

It was not grossly improper for the prosecutor in a capital sentencing proceeding to speak for the victim by arguing that the victim and the State cry from her body in the woods, "death, death, death for [defendant]." The prosecutor's argument merely reminded the jurors that he was advocating for both the State and the victim.

**21. Criminal Law § 1349 (NCI4th Rev.)— capital sentencing— multiple nonstatutory mitigating circumstances—shorthand instruction—single peremptory instruction**

The trial court did not commit plain error in a capital sentencing proceeding by tendering a shorthand instruction for twenty-four nonstatutory mitigating circumstances and by tendering a single peremptory instruction for all of these nonstatutory mitigating circumstances.

**22. Criminal Law § 1336 (NCI4th Rev.)— capital sentencing— inadmissible character evidence—not plain error**

Assuming *arguendo* that evidence presented by the State in a capital sentencing proceeding that defendant had been incarcerated prior to a 1975 rape used by the State in support of the (e)(3) aggravating circumstance constituted inadmissible character evidence, the admission of this evidence did not rise to the level of plain error where the victim of the 1975 rape had previously referred to defendant in her testimony as a "convict" without objection, and defendant did not assign error on appeal to the admission of this testimony.

**23. Criminal Law § 1402 (NCI4th Rev.)— death penalty not disproportionate**

A sentence of death imposed upon defendant for first-degree murder was not excessive or disproportionate where defendant was convicted under theories of both premeditation and deliberation and felony murder; defendant was also convicted of first-degree rape and first-degree kidnapping; the jury found as aggravating circumstances that defendant had previously been convicted of a felony involving the use or threat of violence to the person, that this murder was committed while defendant was engaged in the commission of a rape, and that this murder was committed while defendant was engaged in the commission of a kidnapping; and the evidence tended to show that defendant abducted the victim from her apartment, took her into the woods, tied her to a tree, had intercourse with her, and inflicted three neck wounds with a knife that severed her carotid artery and caused her death.

Justice WYNN did not participate in the consideration or decision of this case.

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Lamm, J., on 19 November 1996 in Superior Court, Randolph County, upon a jury verdict of guilty of first-degree murder. Defendant's motion to bypass the Court of Appeals as to additional judgments for first-degree kidnapping and first-degree rape was allowed by the Supreme Court on 25 February 1998. Heard in the Supreme Court 1 October 1998.

*Michael F. Easley, Attorney General, by William B. Crumpler, Assistant Attorney General, for the State.*

*Stanley F. Hammer and John Bryson for defendant-appellant.*

STATE v. TRULL

[349 N.C. 428 (1998)]

PARKER, Justice.

Defendant Gary Allen Trull was indicted on 17 June 1994 for first-degree murder, first-degree kidnapping, and first-degree rape. He was tried capitally and found guilty of first-degree murder on the bases of premeditation and deliberation and felony murder. He was also found guilty of first-degree kidnapping and first-degree rape. Following a capital-sentencing proceeding, the jury recommended a sentence of death for the murder; and the trial court entered judgment accordingly. The trial court sentenced defendant to a consecutive sentence of forty years' imprisonment for the first-degree kidnapping conviction and to a consecutive sentence of life imprisonment for the first-degree rape conviction.

The State's evidence tended to show that defendant kidnapped, raped, and murdered Vanessa Dawn Dixon ("victim"). The victim was last seen at approximately 3:00 a.m. on the morning of 17 November 1993. Upon learning that the victim did not report to work at Randolph Hospital, the victim's mother and a friend went to her apartment. They noticed that some items were out of place in her apartment. The front door had been swung open hard enough to break off pieces of wood from the molding around the closet door. The bed was unmade; and clothes, including pantyhose, were lying on the bed. A table had been moved, and some items in the entertainment center had been knocked over.

While they were looking around the apartment, defendant, who lived in the same apartment complex, appeared. Defendant said he had heard some noise and wanted to know what was happening. Defendant then called the apartment owner. The owner commented about not touching things, but defendant replied that it was too late. The police were subsequently called, and a search for the victim was initiated.

On 23 November 1993 the victim's body was found in the woods, about five hundred feet from Hardin-Ellison Road. Her body was clothed in a shirt and pants but no undergarments, which was uncharacteristic of the victim. Her body was lying at the base of a tree, and a piece of a blue nylon strap lay partially under her left shoulder. This strap matched a blue nylon tie-down strap taken from defendant's truck. Fibers from the strap were also found on the victim's right hand. Other evidence suggested that the body was deposited in the woods sometime after 5:00 a.m. on 17 November 1993. A DNA analysis of semen and spermatozoa samples taken from the victim's body

matched the DNA profile for defendant. No semen was found on the victim's pants.

An autopsy revealed that the victim's death was the result of three neck wounds which severed the left carotid artery. The wounds were consistent with someone slicing the victim's neck from behind with a knife held in the left hand. Defendant was left-handed. Moreover, defendant collected knives; and his then-wife noticed three days after the victim's disappearance that one particular knife was missing. This knife had sentimental value to defendant. Defendant told his then-wife that he broke the knife and threw it away; however, she did not see it in the trash.

Additional facts will be presented as needed to discuss specific issues.

## PRETRIAL ISSUES

[1] By his first assignment of error, defendant contends that the trial court erred by denying his motion to continue a hearing on defendant's motion for change of venue. Defendant argues that the district attorney's calendaring of the change-of-venue motion and the trial court's denial of the motion to continue violated his constitutional rights.

At the hearing on the motion to continue, one of defendant's attorneys, Mr. Richard Roose, stated, "[U]ntil about fifteen minutes ago I was involved in the trial of another matter with this Court, and my preparation efforts have been directed entirely towards that matter this week." He also informed the trial court that his private investigator was not available to testify. The district attorney responded that the State was willing to stipulate to the surveys of defendant's private investigator. Mr. Roose again argued for a continuance, at which point the trial court denied the continuance motion.

Normally, our review of a denial of a motion for continuance is restricted to whether the trial court abused its discretion; and the denial will not be disturbed absent a showing of abuse of that discretion. *State v. Barnard*, 346 N.C. 95, 104, 484 S.E.2d 382, 387 (1997). However, when the motion is based on a constitutional issue, the issue is a reviewable question of law. *Id.* "The denial of a motion to continue, even when the motion raises a constitutional issue, is grounds for a new trial only upon a showing by the defendant that the denial was erroneous and also that his case was prejudiced as a result

of the error." *State v. Branch*, 306 N.C. 101, 104, 291 S.E.2d 653, 656 (1982).

We find no merit in defendant's unfairness and due-process arguments regarding the district attorney's scheduling of the hearing on this motion. Defendant does not argue that he was not given adequate notice of the district attorney's intention to call the change-of-venue motion. In fact, Mr. Roose conceded at the hearing that the district attorney gave defendant such notice. Further, in support of his motion for continuance, Mr. Roose argued only that his preparation efforts had been focused on another case. He did not contend that the trial court's ruling on defendant's motion for a change of venue would deprive defendant of his constitutional right to effective assistance of counsel or deprive him of a fair opportunity to prepare and present his defense. Defendant was represented by two attorneys at the hearing, and no evidence suggests that Mr. Pierre Oldham's preparation efforts were directed toward other matters. Moreover, Mr. Roose stated that the only evidence or testimony unavailable at the hearing was that of the private investigator; but the district attorney agreed to stipulate to the investigator's surveys. Thus, defendant made no showing to the trial court of prejudice to his case if the continuance was not granted. Accordingly, we find no error in the denial of the motion for a continuance.

[2] Defendant next contends that the trial court violated his constitutional rights by holding an unrecorded bench conference outside his presence. At the conclusion of the hearing on defendant's motion for change of venue, the trial court remanded defendant to the sheriff's custody. The trial court then called the district attorney and defense counsel to the bench, and at some point defendant was escorted out of the courtroom by the sheriff. Defendant argues that his absence from the courtroom during this bench conference violated his state and federal constitutional rights to be present at every stage of the proceedings. Although defendant argues that his rights under the United States Constitution have been violated, defendant's assignments of error do not include this contention as required by the Rules of Appellate Procedure. *See* N.C.R. App. P. 10(a) ("Except as otherwise provided herein, the scope of review on appeal is confined to consideration of those assignments of error set out in the record on appeal in accordance with this Rule 10."). Accordingly, defendant has failed to preserve this issue for appellate review.

As to the state constitutional issue, in *State v. Rannels*, 333 N.C. 644, 653, 430 S.E.2d 254, 259 (1993), this Court held that "[d]e-

fendant's constitutional right to be present at all stages of the trial is by definition a right pertaining to the trial itself. It does not arise before the trial begins." In this case the challenged bench conference occurred prior to the commencement of defendant's trial. *See State v. Bonnett*, 348 N.C. 417, 431, 502 S.E.2d 563, 573 (1998) (finding no error when a bench conference in which defendant was not present took place prior to the start of trial). Further, at the time of the complained-of conference, the trial court had made its ruling; and defendant's hearing was completed. Therefore, this assignment of error is overruled.

[3] Next, defendant contends that the trial court erred by denying his motion to change venue. He argues that pretrial publicity and the response of prospective jurors demonstrate that it was impossible for him to receive a fair trial by a Randolph County jury.

N.C.G.S. § 15A-957 provides that if "the court determines that there exists in the county in which the prosecution is pending so great a prejudice against the defendant that he cannot obtain a fair and impartial trial, the court must either" transfer the proceeding to another county or order a special venire. N.C.G.S. § 15A-957 (1997). Defendant bears the burden of establishing that "it is reasonably likely that prospective jurors would base their decision in the case upon pretrial information rather than the evidence presented at trial and would be unable to remove from their minds any preconceived impressions they might have formed." *State v. Jerrett*, 309 N.C. 239, 255, 307 S.E.2d 339, 347 (1983). A defendant must "establish specific and identifiable prejudice against him as a result of pretrial publicity . . . [by demonstrating] *inter alia* that jurors with prior knowledge decided the case, that he exhausted his peremptory challenges, and that a juror objectionable to him sat on the jury." *State v. Billings*, 348 N.C. 169, 177, 500 S.E.2d 423, 428 (emphasis omitted). The determination of whether defendant has carried his burden rests within the sound discretion of the trial court. *State v. Barnes*, 345 N.C. 184, 204, 481 S.E.2d 44, 54, *cert. denied*, —— U.S. ——, 139 L. Ed. 2d 134 (1997), *and cert. denied*, —— U.S. ——, 140 L. Ed. 2d 473 (1998).

Our review of the record reveals that the trial court did not err by denying defendant's motion for change of venue. Only three of the twelve seated jurors indicated that they had read or heard about defendant's case; and all three stated unequivocally that they had not formed an opinion about the case, could set aside any information, and could be fair and impartial jurors. Furthermore, the only seated

juror to whom defendant objected had had no pretrial exposure to the case.

Our examination of this issue in the present case, however, must go further. As indicated in *Jerrett*, where the totality of the circumstances reveals that an entire county's population was "infected" with prejudice against a defendant, the defendant has met his burden of showing that he could not receive a fair trial in that county. *State v. Jerrett*, 309 N.C. at 258, 307 S.E.2d at 349. In *Jerrett* we noted that "the crime occurred in a small, rural and closely-knit county where the entire county was, in effect, a neighborhood." *Id.* at 256, 307 S.E.2d at 348. Alleghany County, where Jerrett was tried, had a population at that time of 9,587 people, *id.* at 252 n.1, 307 S.E.2d at 346 n.1; the *voir dire* revealed that one-third of the prospective jurors knew the victim or some member of the victim's family, and that many jurors knew potential State's witnesses, *id.* at 257, 307 S.E.2d at 348-49. Furthermore, *voir dire* was done collectively, thus allowing prospective jurors to hear that other prospective jurors knew the victim's family, that some had formed opinions, and that some would be unable to give the defendant a fair trial. *Id.* at 257-58, 307 S.E.2d at 349.

Defendant's case is distinguishable from *Jerrett*. Randolph County's population at the time of this murder was over 106,000. *North Carolina Manual 1993-1994*, at 883 (Lisa A. Marcus ed.). Further, the level of familiarity that the jurors in *Jerrett* had with the victim, the victim's family, and witnesses does not exist in this case. Although a number of prospective jurors had read or heard about the case, we conclude that, in light of the totality of the circumstances, a reasonable likelihood does not exist that pretrial publicity prevented defendant from receiving a fair trial in Randolph County.

Defendant further argues that jurors were exposed to prejudicial information as a result of collective *voir dire* of prospective jurors. However, a careful examination of jury selection reveals no harm to defendant resulting from collective, rather than individual, *voir dire*. In fact, the trial judge repeatedly permitted both sides to conduct individual *voir dire* of prospective jurors when necessary to prevent other prospective jurors from being exposed to prejudicial pretrial publicity and opinions. We conclude that the trial court did not err by refusing to grant defendant's motion for change of venue, and this assignment of error is overruled.

## JURY SELECTION ISSUES

[4] Defendant also argues that the trial court erred in denying his motion for individual *voir dire* of prospective jurors. Defendant contends that collective *voir dire* exposed those jurors who sat on defendant's jury to statements of other prospective jurors who stated that they could not be fair and impartial as the result of pretrial publicity.

N.C.G.S. § 15A-1214(j) authorizes the trial court for good cause shown in a capital case to direct individual selection of jurors. However, the decision whether to allow or deny individual *voir dire* of prospective jurors lies in the sound discretion of the trial court; and absent a showing of abuse of discretion, its ruling will not be disturbed on appeal. *State v. Bonnett*, 348 N.C. 417, 429, 502 S.E.2d 563, 572. The burden is on defendant to show the possible particular harm to him which resulted from his being required to question jurors collectively. *State v. Barnes*, 345 N.C. at 208, 481 S.E.2d at 56-57. In the present case defendant has failed to show in what manner collective *voir dire* tainted the jurors who were seated. Heeding the admonition from the trial court, the parties were careful not to elicit specific information or opinions in the presence of other prospective jurors. On several occasions the trial court did in fact permit both sides to conduct individual *voir dire* to protect against the prejudice defendant now claims occurred in his case. On this record we are not persuaded that the trial court abused its discretion. Thus, this assignment of error is overruled.

Next, defendant contends that the trial court erred in denying his challenges for cause of prospective jurors Mize and Gardner and juror Morton on the basis of their inability to render a fair and impartial verdict. N.C.G.S. § 15A-1212 sets forth the grounds for challenging a juror, including the ground that the juror, for any other cause, is unable to render a fair and impartial verdict. N.C.G.S. § 15A-1212(9) (1997). N.C.G.S. § 15A-1214(h) provides that a defendant may seek reversal of the trial judge's refusal to allow a challenge for cause provided the defendant has exhausted his peremptory challenges, has renewed his challenge, and has had his renewal motion denied.

We agree with defendant that he has complied with the requirements of N.C.G.S. § 15A-1214 and has thus properly preserved this assignment of error for appellate review. However, the determination of whether to grant a challenge for cause rests in the sound discretion

of the trial court and will not be disturbed absent a showing of abuse of that discretion. *State v. Hartman*, 344 N.C. 445, 458, 476 S.E.2d 328, 335 (1996), *cert. denied*, 520 U.S. 1201, 137 L. Ed. 2d 708 (1997). In addition to abuse of discretion, defendant must show prejudice to establish reversible error concerning *voir dire*. *Id.* at 459, 476 S.E.2d at 335.

**[5]** First, defendant maintains that the trial court should have excused juror Rhonda Morton based on "her close relationship with Sheriff [of Randolph County, Litchard] Hurley." The transcript discloses that Sheriff Hurley was not a witness in this case, that Sheriff Hurley and Ms. Morton were friends, that they had discussed a personal problem of Ms. Morton's, that Sheriff Hurley never mentioned anything about defendant's case to Ms. Morton, and that Ms. Morton had not heard anything concerning the Sheriff's interest in or opinion about the case from other people. Furthermore, juror Morton's responses indicated that she could remain a fair and impartial juror, could follow the law concerning the burden of proof and the presumption of innocence, and could consider both sentencing options. On this record defendant has failed to demonstrate an abuse of the court's discretion in denying the challenge for cause as to Ms. Morton.

**[6]** Next, defendant argues that the trial court erred in failing to remove prospective juror Earl Gardner for cause based on pretrial publicity and his inability to render a fair and impartial verdict. Gardner stated that he had read and heard about defendant's case and that someone at his place of work was soliciting signatures on a petition for a speedy trial. Defense counsel then asked Gardner "based on what you may have heard, do you feel like you could put all that behind you and not be influenced in your first duty to render a verdict of guilt or innocence, and the second, if necessary, to go on and return a sentence recommendation?" Gardner responded, "I don't feel like it would bother me."

Defendant now maintains that Gardner's response was equivocal and that, based on *State v. Hightower*, 331 N.C. 636, 417 S.E.2d 237 (1992), this Court should find reversible error in the denial of his challenge for cause. In *Hightower* we found error in the trial court's failure to allow the challenge for cause on the grounds that the prospective juror stated that the defendant's failure to testify would "stick in the back of my mind," and gave other responses which suggested his inability to give the defendant a fair and impartial trial. *Id.*

at 641, 417 S.E.2d at 240. In this case Gardner's responses do not demonstrate that he could not return a verdict in accordance with the law of North Carolina. Gardner had previously responded that he agreed with and could follow the applicable law concerning burden of proof and presumption of innocence and that he would require the State to prove every element of the offense beyond a reasonable doubt before rendering a verdict of guilty. Furthermore, defendant did not ask any follow-up questions to clarify what Gardner meant by "feel." Given this fact, defendant cannot now complain that the prospective juror, following a common speech pattern in the English language, responded using the same verb used in the question. The trial court heard Gardner's responses, observed his demeanor, assessed his credibility, and, in its discretion, made the decision to reject defendant's for-cause challenge. Again, defendant has failed to show an abuse of discretion.

[7] Finally, defendant contends that the trial court erred in denying his challenge for cause to prospective juror Jacklene Mize. Defendant's argument is threefold. First, defendant argues that Mize gave a negative answer concerning whether she would require the State to carry its burden of proof. In support of this contention, defendant cites Mize's response of "No" to the question, "And you would require the State to carry its burden and you would not require the defendant to prove anything to you in this case?" Read in the context of the double question asked, this response was an unequivocal statement that Mize would not require defendant to prove anything and that she would require the State to carry its burden.

Second, defense counsel inquired whether it would be difficult for Mize to vote for life imprisonment for a person convicted of first-degree murder, to which Mize replied, "I don't really know about that." Contrary to defendant's contention, this answer was not an expression of Mize's inability to recommend a life sentence; rather her response answered the question whether it would be difficult to do so. Based on the question asked, defendant's argument that this response requires that he be given relief under *Morgan v. Illinois*, 504 U.S. 719, 119 L. Ed. 2d 492 (1992), is without merit.

Third, defendant asserts that Mize never stated that she could set aside what she had read and heard about defendant and the case and base her decision on the evidence presented. Mize said that she had read about and heard opinions expressed about defendant's case but had not formed any opinions herself. We hold that the *voir dire* of

prospective juror Mize when read in its entirety does not demonstrate that she was unable to give defendant a fair and impartial trial. Thus, we find no merit to defendant's argument that the trial court abused its discretion in denying defendant's challenge for cause.

## GUILT-INNOCENCE PHASE

**[8]** Defendant next contends that the trial court erred in denying his motion *in limine* and allowing the admission of eight photographs. Defendant argues that the photographs are gory and gruesome and show the victim's body in an advanced state of decomposition with maggot infestation. Since he did not place maggots on the victim and the decomposition was not the result of any of his alleged actions, defendant submits that the photographs were irrelevant, inflammatory, and unduly prejudicial. Defendant also argues that the trial court erred in allowing the jury to view the photographs during deliberations. We find no merit to these arguments.

Generally, gory or gruesome photographs are admissible so long as they are used for illustrative purposes and are not introduced solely to arouse the jurors' passions. *See State v. Skipper*, 337 N.C. 1, 35, 446 S.E.2d 252, 270 (1994), *cert. denied*, 513 U.S. 1134, 130 L. Ed. 2d 895 (1995); *State v. Williams*, 334 N.C. 440, 460, 434 S.E.2d 588, 600 (1993), *sentence vacated on other grounds*, 511 U.S. 1001, 128 L. Ed. 2d 42 (1994).

The State introduced into evidence eight photographs of the victim. One photograph helped explain the forensic entomologist's testimony concerning his determination of the date and time of the victim's death. A second photograph was used during the testimony of a State Bureau of Investigation ("SBI") agent to illustrate evidence-gathering techniques, including placing bags over the victim's hands and using a stain to enhance blood found on the victim's body. The remaining six photographs were autopsy photographs which depicted different views of the victim's neck wounds, injured artery, and genitalia; they were used to illustrate the testimony of the forensic pathologist. We conclude that the photographs were relevant and had probative value.

Having determined that the photographs were relevant and probative, we now address defendant's argument that the unfairly prejudicial effect of the photographs outweighed their probative value. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion

of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C.G.S. § 8C-1, Rule 403 (1992). Whether to exclude evidence under Rule 403 of the North Carolina Rules of Evidence rests within the discretion of the trial court and will not be overturned absent an abuse of discretion. *See State v. Williams*, 334 N.C. at 460, 434 S.E.2d at 600; *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988). "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Hennis*, 323 N.C. at 285, 372 S.E.2d at 527.

Having viewed the photographs and determined that they were relevant and probative and that they assisted in illustrating the testimony of the forensic entomologist, SBI agent, and forensic pathologist, we conclude that the trial court did not abuse its discretion in admitting the photographs. We further conclude that the trial court did not abuse its discretion under N.C.G.S. § 15A-1233(a) by permitting the jurors to reexamine the photographs in the courtroom during their deliberations. This assignment of error is overruled.

In defendant's next assignment of error, he argues that the trial court erred by admitting, over defendant's objections, evidence of defendant's character. Specifically, defendant challenges the testimony of witness Linda Hooker when during cross-examination the prosecutor questioned her concerning "suspicious activity" by defendant. During direct examination, Hooker testified that at approximately 3:00 a.m. on 17 November 1993, she saw a cream-colored truck do some "strange" things, including driving in the parking lot of the apartment complex without its lights on. On cross-examination, the prosecutor, without objection, asked the witness if she "thought that this type of activity was suspicious." The witness responded affirmatively. The prosecutor then asked, "Isn't it true that you told the news media that you also witnessed suspicious activity about [defendant]?" Defense counsel objected, and the trial court sustained the objection as to the form of the question. The prosecutor rephrased the question, defense counsel did not object, and the witness proceeded to describe an incident that occurred during the summer of 1993.

After she described that incident, she volunteered the fact that there were "a couple of other incidents, also." The prosecutor replied, "A couple of other incidents of suspicious activity?" The witness said, "Yes"; and defense counsel objected. The trial court overruled the

objection after the prosecutor explained that he was "getting ready to ask her if there were any other incidences." The witness described a second incident, and the prosecutor again inquired about another incident. Without objection, the witness described a third incident and told the prosecutor that there were no other incidents. Defendant contends that this testimony was inadmissible character evidence regarding defendant pursuant to N.C.G.S. § 8C-1, Rule 404(a)(1) since defendant had not placed his character in issue. Defendant further contends that this evidence was irrelevant under N.C.G.S. § 8C-1, Rule 402 (1992) and that the evidence did not come within the ambit of permissible purposes under N.C.G.S. § 8C-1, Rule 404(b). Finally, defendant argues that by characterizing defendant's activity as "suspicious," the prosecutor improperly injected his own opinions.

This Court has held that the scope of cross-examination rests within the sound discretion of the trial court and that the questions must be asked in good faith. *State v. Larry*, 345 N.C. 497, 523, 481 S.E.2d 907, 922, *cert. denied*, —— U.S. ——, 139 L. Ed. 2d 234 (1997). "A prosecutor's questions are presumed to be proper unless the record shows that they were asked in bad faith." *State v. Bronson*, 333 N.C. 67, 79, 423 S.E.2d 772, 779 (1992). Abuse of discretion may be found when a prosecutor affirmatively places before the jury an incompetent and prejudicial matter by injecting, *inter alia*, his own personal opinions which are neither in evidence nor admissible. *Id.*

[9] First, we note that defendant's first objection was sustained. Generally, a defendant is not prejudiced when his objection to an improper question is sustained, *State v. Hunt*, 325 N.C. 187, 197, 381 S.E.2d 453, 459 (1989), and we perceive no prejudice to defendant in this instance. Defendant's second objection concerned other incidents of suspicious activity by defendant. The record reveals that the witness testified about such activity without objection both before and after this objection; therefore, defendant waived his right to raise this objection on appeal. As we stated in *State v. Alford*, 339 N.C. 562, 570, 453 S.E.2d 512, 516 (1995), "[w]here evidence is admitted over objection and the same evidence has been previously admitted or is later admitted without objection, the benefit of the objection is lost." Further, we find no merit to defendant's argument that the prosecutor's characterization of defendant's activities as "suspicious" impermissibly injected his personal opinions. This assignment of error is overruled.

Next, defendant contends that the trial court erred in denying his motion to dismiss the first-degree murder charge. Defendant asserts

that the evidence was insufficient to prove premeditation and deliberation and felony murder.

When determining the sufficiency of the evidence to support a charged offense, we must view the evidence "in the light most favorable to the State, giving the State the benefit of all reasonable inferences." *State v. Benson,* 331 N.C. 537, 544, 417 S.E.2d 756, 761 (1992). A defendant's motion to dismiss must be denied if the evidence considered in the light most favorable to the State permits a rational jury to find beyond a reasonable doubt the existence of each element of the charged crime and that defendant was the perpetrator. *See State v. Williams,* 334 N.C. at 447, 434 S.E.2d at 592.

Whether the evidence presented is direct or circumstantial or both, the test for sufficiency is the same. *State v. Vause,* 328 N.C. 231, 237, 400 S.E.2d 57, 61 (1991); *State v. Bullard,* 312 N.C. 129, 160, 322 S.E.2d 370, 388 (1984). "Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence." *State v. Stone,* 323 N.C. 447, 452, 373 S.E.2d 430, 433 (1988). If the evidence supports a reasonable inference of defendant's guilt based on the circumstances, then "it is for the [jurors] to decide whether the facts, taken singly or in combination, satisfy them beyond a reasonable doubt that the defendant is actually guilty." *State v. Rowland,* 263 N.C. 353, 358, 139 S.E.2d 661, 665 (1965).

Applying the foregoing rules to the evidence presented in this case, we conclude that the evidence was sufficient for a rational jury to find defendant guilty beyond a reasonable doubt of the murder of Vanessa Dixon under the theories of premeditation and deliberation and felony murder.

[10] Initially, defendant argues that the evidence is insufficient to prove that he perpetrated this offense. The evidence, viewed in the light most favorable to the State, shows that on the morning of the victim's disappearance, defendant was the only other person in the apartment complex, thus affording him the opportunity to commit the offense. Further, defendant's sperm was found inside the victim's vagina; a nylon strap identical to the piece of one found by the victim's body was discovered in defendant's truck; and the fatal wounds on the victim's neck indicate that they were inflicted by a left-handed person, which defendant is. The State's expert-witness testimony further tends to show that the perpetrator tied the victim to a tree in the woods, that he had sexual intercourse with her in the woods, and that

the fatal wounds were inflicted where the body was found. We hold that this evidence is sufficient to permit a rational jury to find that defendant was the perpetrator.

First-degree murder is the intentional and unlawful killing of a human being with malice and with premeditation and deliberation. *State v. Taylor*, 337 N.C. 597, 607, 447 S.E.2d 360, 367 (1994). Premeditation means that the act was thought over beforehand for some length of time; however, no particular amount of time is necessary for the mental process of premeditation. *State v. Conner*, 335 N.C. 618, 635, 440 S.E.2d 826, 835-36 (1994). Deliberation means an intent to kill, carried out in a cool state of blood, in furtherance of a fixed design for revenge or to accomplish an unlawful purpose and not under the influence of a violent passion, suddenly aroused by legal provocation or lawful or just cause. *State v. Warren*, 348 N.C. 80, 102, 499 S.E.2d 431, 443, *cert. denied*, —— U.S. ——, 142 L. Ed. 2d 216 (1998). In *State v. Taylor* we held that want of provocation on the part of the deceased, the conduct of and statements of the defendant before and after the killing, the brutality of the murder, and attempts to cover up involvement in the crime are among other circumstances from which premeditation and deliberation can be inferred. *State v. Taylor*, 337 N.C. at 607-08, 447 S.E.2d at 367.

**[11]** In this case the State's evidence showed a lack of provocation by the victim, that defendant abducted the victim from her apartment, took her to the woods, tied her to a tree, raped her, and inflicted three neck wounds that severed her carotid artery and caused her death. Defendant then left the victim in the woods, where her body decomposed and became infested with maggots. Upon hearing others in the victim's apartment, defendant went in, asked some questions, and proceeded to place his fingerprints throughout her apartment, potentially destroying evidence. These facts permit the inference that defendant acted with premeditation and deliberation.

**[12]** Defendant further argues that the evidence was not sufficient to support a finding of rape, thus undermining his conviction for first-degree murder based on the felony-murder rule. Specifically, defendant asserts that the evidence was insufficient to show that he and the victim had intercourse against the victim's will. "A person is guilty of rape in the first degree if he engages in vaginal intercourse[] . . . [w]ith another person by force and against the will of the other person[] and[] . . . [i]nflicts serious personal injury upon the victim . . . ."

N.C.G.S. § 14-27.2(a)(2)(b) (1993). As stated above, defendant's sperm was found inside the victim's vagina. Also, the evidence tended to show that the sex occurred in the woods where the victim's body was found. While there was no evidence of genital trauma, there was evidence that the victim was abducted from her apartment. Defendant failed to present any evidence that the sex was consensual. Thus, viewing the evidence in the light most favorable to the State, a rational trier of fact could find that defendant raped the victim.

Finally, defendant argues that the evidence did not support a finding that the rape and murder were committed in one continuous transaction. This Court has stated that a murder is committed in the "perpetration of a felony for purposes of the felony murder rule where there is no break in the chain of events leading from the initial felony to the act causing death, so that the homicide is part of a series of incidents which form one continuous transaction." *State v. Hutchins*, 303 N.C. 321, 345, 279 S.E.2d 788, 803 (1981). All that is required to support convictions for a felony offense and related felony murder "is that the elements of the underlying offense and the murder occur in a time frame that can be perceived as a single transaction." *State v. Thomas*, 329 N.C. 423, 434-35, 407 S.E.2d 141, 149 (1991). We hold that the evidence supports the inference that the underlying felony of rape and the killing occurred pursuant to a continuous transaction. Thus, the trial court properly denied defendant's motion to dismiss the charge of first-degree murder.

[13] Defendant next contends that the trial court erred by denying his request to instruct the jury on second-degree murder as a lesser-included offense of first-degree murder.

"If the State's evidence establishes each and every element of first-degree murder and there is no evidence to negate these elements, it is proper for the trial court to exclude second-degree murder from the jury's consideration." *State v. Flowers*, 347 N.C. 1, 29, 489 S.E.2d 391, 407 (1997), *cert. denied*, —— U.S. ——, 140 L. Ed. 2d 150 (1998). In this assignment of error defendant argues that the State's evidence did not fully satisfy the elements of premeditation and deliberation in that the State's evidence was based upon inference drawn from the condition of the victim's body when it was discovered. However, as discussed in the previous assignment of error, the State presented positive and uncontroverted evidence of each element of first-degree murder. In particular the State's evidence

showed that defendant took the victim to the woods, tied her to a tree, stabbed the victim while she was tied to the tree, and later returned to the victim's apartment where he feigned ignorance and attempted to destroy evidence. Defendant's evidence did not negate or contradict this evidence of premeditation and deliberation. The trial court did not err in denying defendant's request to submit the lesser-included offense of second-degree murder.

[14] Next, defendant contends that the trial court erred by denying his motion to dismiss the charge of first-degree kidnapping. The indictment for kidnapping alleged, *inter alia,* that defendant unlawfully removed the victim from one place to another without her consent, for the purpose of facilitating the commission of the felony of first-degree rape, doing serious bodily injury to her, and terrorizing her. N.C.G.S. § 14-39 (1993). Defendant argues that the evidence was insufficient to prove both that defendant raped the victim and that he unlawfully removed her from one place to another without her consent. We disagree. The State's evidence showed that the victim was a responsible, dedicated employee who was scheduled to teach a computer class at 9:00 a.m. but did not show up for work. When the victim's mother and a friend went to the victim's apartment, the victim's car was where it had been parked earlier in the day. The door casing around a closet behind the front door to the apartment was damaged as though the front door had been banged against the casing. When the victim's body was found, the victim was clothed in a pair of thin white slacks, a thin brown blouse, and a jacket, not the type clothing she would wear to work. The victim was not wearing any undergarments and had on lace-up shoes. In his statements to the investigating officers, defendant said that he did not know the victim, that he had seen her entering and leaving her apartment, and that he had spoken to her in passing one or two times. As noted earlier defendant's semen was found in the victim's vagina. This evidence supports the inference that defendant forced his way into the victim's apartment, forced her to dress hurriedly, forced her out of the apartment and into his truck, and then drove to the woods where he raped and murdered her. Therefore, we hold that there was sufficient evidence presented for a rational jury to find that defendant unlawfully removed her from one place to another without her consent for the purpose of committing first-degree rape. This assignment of error is meritless.

[15] Defendant also contends that the trial court erred by denying his motion to dismiss the first-degree rape charge. Defendant argues that there is no evidence that the intercourse was non-consensual or

that defendant displayed a weapon at the time or inflicted serious bodily injury. When the victim of rape has also been murdered, reliance on inferences to be drawn from circumstantial evidence is often necessary to determine if the intercourse was by force and against the will of the victim. As already discussed, and contrary to defendant's argument, we find that the evidence was sufficient for a rational jury to find that defendant had vaginal intercourse with the victim without her consent and that he inflicted serious personal injury upon her. N.C.G.S. § 14-27.2(a)(2)(b). This assignment of error is overruled.

[16] Next, defendant contends that the trial court should have intervened *ex mero motu* when the prosecutor made misstatements of law in his closing arguments. Although he failed to object, defendant contends that the prosecutor's argument erroneously informed the jury that it could presume the elements of malice and intent, thus entitling him to a new trial.

The standard of review when a defendant fails to object at trial is whether the argument complained of was so grossly improper that the trial court erred in failing to intervene *ex mero motu*. " '[T]he impropriety of the argument must be gross indeed in order for this Court to hold that a trial judge abused his discretion in not recognizing and correcting *ex mero motu* an argument which defense counsel apparently did not believe was prejudicial when he heard it.' " *State v. Hipps*, 348 N.C. 377, 411, 501 S.E.2d 625, 645 (1998) (quoting *State v. Johnson*, 298 N.C. 355, 369, 259 S.E.2d 752, 761 (1979)). In determining whether the statement was grossly improper, we must examine the context in which it was given and the circumstances to which it refers. *State v. Tyler*, 346 N.C. 187, 205, 485 S.E.2d 599, 609, *cert. denied*, —— U.S. ——, 139 L. Ed. 2d 411 (1997); *State v. Alston*, 341 N.C. 198, 239, 461 S.E.2d 687, 709 (1995), *cert. denied*, 516 U.S. 1148, 134 L. Ed. 2d 100 (1996).

During his closing argument the prosecutor stated the following:

If the defendant intentionally and with malice killed the victim with a deadly weapon, the Judge will charge him [sic] you can presume malice from the use of a deadly weapon. A knife is a deadly weapon. Causing such wounds is certainly evidence that it is a deadly weapon. . . . Third, the defendant intended to kill the victim, and we can presume an intent from the circumstances, the number of wounds, excessive wounds to the neck area.

Even assuming *arguendo* that the closing argument included misstatements of law, we detect no prejudice to the defendant. Defendant offered no evidence of self-defense or evidence of a killing in the heat of passion that would negate malice, and he offered no evidence that would tend to negate the element of intent to kill. *See State v. McCoy*, 320 N.C. 581, 587-88, 359 S.E.2d 764, 767-68 (1987) (finding no plain error in the court's charge instructing that malice is implied if the jury finds that defendant intentionally killed the victim with a deadly weapon).

Further, the trial court properly instructed the jury regarding the elements of first-degree murder, including malice and intent. We conclude that those instructions cured any prejudice to defendant which may have resulted from the alleged misstatements of law in the prosecutor's arguments. *State v. Buckner*, 342 N.C. 198, 238, 464 S.E.2d 414, 437 (1995) (holding that any prejudice resulting from alleged misrepresentations concerning mitigating circumstances made by the prosecutor was cured by the trial court's proper instructions on the applicable law), *cert. denied*, 519 U.S. 828, 136 L. Ed. 2d 47 (1996).

**[17]** Defendant next argues that the trial court erred by not intervening *ex mero motu* when the prosecutor, in his closing argument, allegedly commented on defendant's failure to testify. During closing argument the prosecutor argued:

> Even attacked—nothing's sacred in this case, attacked Vanessa. Attacked the State, attacked the SBI, attacked Ratcliff because he said he can't remember whether he or Owens took this sealed box of evidence down to the lab. Why all this attacking everybody else? It's the shotgun approach. Hide your defendant, hide all the evidence that incriminates him and the sinister spin.

Counsel are entitled to wide latitude during jury arguments; however, the scope of that latitude is within the discretion of the trial court. *State v. Soyars*, 332 N.C. 47, 60, 418 S.E.2d 480, 487 (1992). Although a prosecutor in a capital trial may argue all the facts in evidence, the law, and all reasonable inferences drawn therefrom, *State v. McCollum*, 334 N.C. 208, 223, 433 S.E.2d 144, 152 (1993), *cert. denied*, 512 U.S. 1254, 129 L. Ed. 2d 895 (1994), "[a] criminal defendant may not be compelled to testify, and any reference by the State regarding his failure to testify is violative of his constitutional right to remain silent," *State v. Baymon*, 336 N.C. 748, 758, 446 S.E.2d 1, 6 (1994). "[T]he error may be cured by a withdrawal of the remark or

by a statement from the court that it was improper, followed by an instruction to the jury not to consider the failure of the accused to offer himself as a witness." *State v. McCall*, 286 N.C. 472, 487, 212 S.E.2d 132, 141 (1975). If the trial court fails to give a curative instruction, then this Court must determine whether the error is harmless beyond a reasonable doubt. *State v. Larry*, 345 N.C. at 524, 481 S.E.2d at 923; *see also* N.C.G.S. § 15A-1443(b) (1997); *State v. Baymon*, 336 N.C. at 758, 446 S.E.2d at 6; *State v. Reid*, 334 N.C. 551, 557, 434 S.E.2d 193, 198 (1993).

The prosecutor may, however, appropriately respond to comments critical of the State's investigation and witnesses made by defense counsel in closing argument in order to restore the credibility of the State's witnesses, *e.g.*, *State v. Larrimore*, 340 N.C. 119, 165, 456 S.E.2d 789, 814 (1995), and to "defend [the prosecutor's] own tactics, as well as those of the investigating authorities, when challenged." *State v. Payne*, 312 N.C. 647, 665, 325 S.E.2d 205, 217 (1985) (citations omitted).

Upon reviewing the record, we conclude that the prosecutor in this case was not commenting on defendant's decision not to testify, but simply responding to and rebutting defense counsel's claims made during closing argument. Thus, the trial court did not err by failing to intervene on its own motion. *See State v. Gregory*, 348 N.C. 203, 211, 499 S.E.2d 753, 759 (holding that the prosecutor's argument simply refuted the defendant's claim and did not amount to gross impropriety), *cert. denied*, —— U.S. ——, 142 L. Ed. 2d 315 (1998). Defendant further argues that the above-quoted portion of the prosecutor's closing argument amounted to an unconstitutional disparagement of defendant's exercise of his right to a jury trial. We conclude that there was no such disparagement. This assignment of error is overruled.

## SENTENCING PROCEEDING ISSUES

Defendant next assigns error to the trial court's submission of the (e)(5) aggravating circumstance that the murder was committed during the course of a rape or kidnapping. N.C.G.S. § 15A-2000(e)(5) (1997). The trial court submitted, and the jury found, this aggravating circumstance twice, once for rape and once for kidnapping. In support of his argument, defendant argues that the evidence was insufficient to support either the rape charge or the kidnapping charge; thus, it was error to submit either felony as an aggravating circumstance. Having previously determined that the evidence supported

the submission of both felonies, we find defendant's argument to be without merit.

[18] Next, defendant contends that the trial court erred in submitting two aggravating circumstances supported by the same evidence. As noted in defendant's previous assignment of error, the (e)(5) aggravating circumstance was submitted twice, once for rape and once for kidnapping.

"We have interpreted N.C.G.S. § 15A-2000(e) to permit the submission of separate aggravating circumstances pursuant to the same statutory subsection if the evidence supporting each is distinct and separate." *State v. Bond*, 345 N.C. 1, 34, 478 S.E.2d 163, 181 (1996), *cert. denied,* —— U.S. ——, 138 L. Ed. 2d 1022 (1997). Moreover, this Court has specifically held "that it is proper for a trial court to allow such multiple submission of the (e)(5) aggravating circumstance." *Id.* at 35, 478 S.E.2d at 181. Since the State presented distinct evidence that defendant committed both rape and kidnapping against the victim during the course of the capital felony, we hold that the trial court properly submitted the (e)(5) aggravating circumstance twice. Thus, this assignment of error is overruled.

[19] Next, defendant assigns error to the prosecutor's referring to him as a "predator" during closing argument. Defendant did not object to this reference during his trial. In *State v. Reeves* the prosecutor also referred to the defendant as a predator; and after examining other cases on this issue, this Court concluded that "it was not reversible error for the court not to intervene *ex mero motu*." *State v. Reeves*, 337 N.C. 700, 733, 448 S.E.2d 802, 817 (1994), *cert. denied*, 514 U.S. 1114, 131 L. Ed. 2d 860 (1995). Similarly, after careful review of the transcript in the present case, we conclude that the prosecutor's argument was not so grossly improper as to require the trial court to intervene *ex mero motu.*

[20] Defendant further asserts that it was grossly improper for the prosecutor to speak for the victim and say that "Vanessa Dixon and the State cries [sic] from her body in the woods; death, death[,] death for Gary Trull." This Court has found no gross impropriety requiring intervention *ex mero motu* when a prosecutor has argued that he speaks for the victim. *State v. Elliott*, 344 N.C. 242, 275, 475 S.E.2d 202, 217 (1996), *cert. denied,* —— U.S. ——, 137 L. Ed. 2d 312 (1997). Since the prosecutor's argument merely reminded the jurors that he was advocating for both the State and the victim, this assignment of error is overruled.

**[21]** Defendant next contends that the trial court erred by tendering a shorthand instruction for twenty-four nonstatutory mitigating circumstances and by tendering a single peremptory instruction for all of these nonstatutory mitigating circumstances.

Defendant argues that the jury instructions regarding these nonstatutory mitigating circumstances were erroneous in two respects: (i) the trial judge should have separately set forth each nonstatutory mitigating circumstance, and (ii) the trial judge should have given a separate peremptory instruction as to each nonstatutory mitigating circumstance. Defendant argues that, by failing to do so, the judge diminished the importance of these mitigating circumstances.

The trial judge instructed the jury as follows:

It is your duty to consider the following circumstances arising from the evidence that you find that have mitigating value. If one or more of you find by a preponderance of the evidence that any of the following circumstances exists and also are deemed by you to have mitigating value, you will so indicate by having your foreperson write "Yes" in the space provided after that circumstance on the "Issues and Recommendation" form. If none of you find the circumstance to exist or if none of you deem it to have mitigating value you will so indicate by having your foreperson write "No" in that space.

The judge then listed nonstatutory mitigating circumstances one through twenty-four. He then gave a proper peremptory instruction as to these nonstatutory mitigating circumstances.

Defendant did not object to these instructions at trial; our review, therefore, is limited to review for plain error. N.C. R. App. P. 10(c)(4). "In order to rise to the level of plain error, the error in the trial court's instructions must be so fundamental that (i) absent the error, the jury probably would have reached a different verdict; or (ii) the error would constitute a miscarriage of justice if not corrected." *State v. Holden*, 346 N.C. 404, 435, 488 S.E.2d 514, 531 (1997), *cert. denied*, —— U.S. ——, 140 L. Ed. 2d 132 (1998).

This Court has repeatedly held that jurors are presumed to pay close attention to the particular language of the judge's instructions in a criminal case and that they undertake to understand, comprehend, and follow the instructions as given. *State v. Moody*, 345 N.C. 563, 577, 481 S.E.2d 629, 636, *cert. denied*, —— U.S. ——, 139 L. Ed. 2d 125 (1997). Further, jury instructions should be as clear as practica-

ble, without needless repetition. *See State v. Terry,* 337 N.C. 615, 623, 447 S.E.2d 720, 724 (1994) (stating that jury instructions should be stripped of redundant and confusing matters). Moreover, this Court has repeatedly approved of trial judges issuing one peremptory instruction for multiple nonstatutory mitigating circumstances; and we see no compelling reason to depart from these holdings. *See, e.g., State v. Bonnett,* 348 N.C. at 447-48, 502 S.E.2d at 583 (finding no error when the judge gave a single peremptory instruction for fifty-eight nonstatutory mitigating circumstances). Defendant has failed to carry his burden of showing that had the judge repeated the same instructions regarding nonstatutory mitigating circumstances twenty-four times, the jury probably would have reached a different verdict; thus, this assignment of error is overruled.

[22] Next, defendant asserts that the trial court committed plain error in permitting the State without objection to put before the jury inadmissible character evidence that defendant had been previously incarcerated. The State presented evidence of defendant's prior conviction of rape in 1975 in support of the (e)(3) aggravating circumstance that defendant had been previously convicted of a felony involving the use or threat of violence to the person. *See* N.C.G.S. § 15A-2000(e)(3). While testifying about this rape conviction, the investigating officer read statements that had been taken from both the victim and defendant. Each of these statements referred to the fact that at the time of the 1975 rape, defendant had previously served time in prison, but did not identify for what crime he had been incarcerated.

Assuming *arguendo* that this evidence was inadmissible character evidence, we hold that admission of the evidence did not rise to the level of plain error. The victim of the 1975 rape previously had testified without objection that after defendant raped her, he told her that that was the first time he had done something and worried about what he had done; and she thought, "oh, me, I've got a convict in my house and how am I going to get him out." On appeal defendant does not assign error to the admission of this testimony. The statements about which defendant now complains were admitted solely to corroborate the earlier testimony. Defendant can show no prejudice where evidence of a similar import has also been admitted without objection and has not been made the subject of an assignment of error on appeal. *Cf. State v. Alford,* 339 N.C. at 570, 453 S.E.2d at 516 (holding that the benefit of the objection is lost where evidence is admitted over objection and the same evidence has been previously

admitted or is later admitted without objection). This assignment of error is overruled.

## PRESERVATION ISSUES

Defendant raises five additional issues which he concedes have been decided contrary to his position previously by this Court: (i) the trial court erred in denying defendant's motion for a list of aggravating circumstances prior to trial, (ii) the trial court erred in denying defendant's motion to question jurors on their understanding of parole eligibility, (iii) the trial court erred in denying his motion to distribute a questionnaire to jurors, (iv) the trial court erred in denying his motion to declare the death penalty unconstitutional, (v) the trial court erred in denying defendant's motion *in limine* to prohibit the admission of testimony and evidence in support of an aggravating circumstance, and (vi) the trial court committed plain error by failing to identify the victim or person alleged as the victim by name when charging the jury on first-degree kidnapping.

Defendant raises these issues for purposes of permitting this Court to reexamine its prior holdings and also for the purpose of preserving them for any possible further judicial review. We have considered defendant's arguments on these issues and find no compelling reason to depart from our prior holdings. These assignments of error are overruled.

## PROPORTIONALITY

[23] Having concluded that defendant's trial and separate sentencing proceeding were free from prejudicial error, it is now our duty to ascertain (i) whether the record supports the jury's finding of the aggravating circumstances on which the sentence of death was based; (ii) whether the death sentence was entered under the influence of passion, prejudice, or other arbitrary factor; and (iii) whether the death sentence is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. N.C.G.S. § 15A-2000(d)(2).

Defendant was convicted of first-degree murder under theories of both premeditation and deliberation and felony murder. He was also convicted of first-degree rape and first-degree kidnapping. Following a capital sentencing proceeding, the jury found the three submitted aggravating circumstances: (i) that defendant had been previously convicted of a felony involving the use or threat of violence to the person, N.C.G.S. § 15A-2000(e)(3); (ii) that this murder was commit-

ted while defendant was engaged in the commission of a rape, N.C.G.S. § 15A-2000(e)(5); and (iii) that this murder was committed while defendant was engaged in the commission of a kidnapping, N.C.G.S. § 15A-2000(e)(5). The catchall statutory mitigating circumstance, N.C.G.S. § 15A-2000(f)(9), was submitted to the jury; but it was not found. Of the twenty-five nonstatutory mitigating circumstances submitted, the jury found six to exist and have mitigating value.

After a thorough review of the transcript, record on appeal, and briefs and oral arguments of counsel, we are convinced that the jury's findings of the three aggravating circumstances submitted were supported by the evidence. Further, we find no indication that the sentence of death in this case was imposed under the influence of passion, prejudice, or any other arbitrary factor. We must turn then to our final statutory duty of proportionality review.

We begin our proportionality analysis by comparing this case to those cases in which this Court has determined the death penalty to be disproportionate. The purpose of proportionality review is to "eliminate the possibility that a person will be sentenced to die by the action of an aberrant jury." *State v. Holden*, 321 N.C. 125, 164-65, 362 S.E.2d 513, 537 (1987), *cert. denied*, 486 U.S. 1061, 100 L. Ed. 2d 935 (1988). This Court has determined the death sentence to be disproportionate on seven occasions. *State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988); *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Gaines*, 345 N.C. 647, 483 S.E.2d 396, *cert. denied*, —— U.S. ——, 139 L. Ed. 2d 177 (1997), *and by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988); *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983); *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983). We conclude that this case is not substantially similar to any case in which this Court has found the death penalty disproportionate.

This case has several features which distinguish it from the cases in which we have found the sentence to be disproportionate. First, in none of those cases were three aggravating circumstances found. Further, in none of the cases in which the death penalty was found to be disproportionate was the (e)(3) aggravating circumstance included. *State v. Lyons*, 343 N.C. 1, 27-28, 468 S.E.2d 204, 217, *cert. denied*, —— U.S. ——, 136 L. Ed. 2d 167 (1996). "The jury's finding of the prior conviction of a violent felony aggravating circumstance is

significant in finding a death sentence proportionate." *Id.* at 27, 468 S.E.2d at 217. Moreover, the jury found defendant guilty of first-degree murder under theories of both premeditation and deliberation and felony murder. We have also noted the significance of a first-degree murder conviction based upon both premeditation and deliberation and felony murder theories. *See State v. Harris*, 338 N.C. 129, 161, 449 S.E.2d 371, 387 (1994), *cert. denied*, 514 U.S. 1100, 131 L. Ed. 2d 752 (1995).

We also compare this case with the cases in which this Court has found the death penalty to be proportionate. While we review all of the cases in the pool of "similar cases" when engaging in our statutorily mandated duty, we have stated previously, and we reemphasize here, that we will not undertake to discuss or cite all of these cases each time we carry out that duty. *State v. Williams*, 308 N.C. 47, 81, 301 S.E.2d 335, 356, *cert. denied*, 464 U.S. 865, 78 L. Ed. 2d 177 (1983). It suffices to say we conclude that this case is more similar to certain cases in which we have found the sentence of death proportionate than to those in which we have found the sentence of death disproportionate.

Accordingly, we conclude that defendant received a fair trial and sentencing proceeding, free from prejudicial error, and that the judgment of death recommended by the jury and entered by the trial court is not disproportionate.

NO ERROR.

Justice WYNN did not participate in the consideration or decision of this case.