IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-230

Filed 19 March 2025

Wilson County, Nos. 20CRS51385 21CRS57

STATE OF NORTH CAROLINA

v.

TELLY SAVALES PARKER

Appeal by defendant from judgment entered 3 February 2023 by Judge L. Lamont Wiggins in Wilson County Superior Court. Heard in the Court of Appeals 25 February 2025.

*Attorney General Jeff Jackson, by Special Deputy Attorney General Isham Faison Hicks, for the State.*

*Michele Ann Goldman, Attorney at Law, by Michele Ann Goldman, for the defendant-appellant.*

TYSON, Judge.

Telly Savales Parker ("Defendant") appeals from judgments entered upon a jury's verdicts finding him guilty of second-degree murder and possession of a firearm by a felon. We find no error.

## I. Background

Defendant shot and killed twenty-one-year-old Amaru Carroll-Lee ("Lee") on the evening of 2 May 2020. Lee had attacked Defendant's son on 1 May 2020. Defendant was upset and sought retribution.

Lee lived with his mother and five-year-old brother. Defendant and several others went to Lee's home. A man in the group knocked on Lee's mother's door and asked her if she knew about any altercations between her son and Defendant's son. Lee's mother explained she was unaware of any altercations, but a man in the group accused her of lying. A few minutes later, the same man who had accused her of lying returned to her door along with Defendant. Defendant and the man pushed their way into the home. Defendant brandished a weapon.

Lee came out of his bedroom and was standing next to his mother when he was shot. His younger brother was also present. After the shooting, Defendant said, "I had to do what I had to do for my son."

Defendant was indicted for first degree murder, first degree burglary, and possession of a firearm by a convicted felon on 12 April 2021. A trial was held on 30 January 2023.

The State called numerous witnesses. Among them was Lee's mother, who testified she had seen Defendant with a gun prior to the shooting, and Defendant was the one who had shot Lee during the confrontation inside her home. Defense counsel, on cross examination, attempted to impeach Lee's mother by highlighting discrepancies between what she had testified to in open court and the notes taken by the detective, who had interviewed her.

The State additionally called for the testimony of one of the other men involved in the encounter, Terry Parker, who had entered into a plea deal with the State. As

a part of his plea deal, the witness' initial charge of first-degree murder was reduced to involuntary manslaughter. During cross examination, Defendant's counsel attempted to impeach Terry Parker's character by questioning him about the specifics of his plea deal and how it had reduced his charge and sentence.

Detective Bradshaw ("Det. Bradshaw") also testified. During direct examination, the prosecutor asked Det. Bradshaw about what had occurred when Defendant had surrendered himself to police. During the questioning, the prosecutor asked Det. Bradshaw whether Defendant had spoken to police officers. Defendant's counsel objected to the question for impermissibly commenting on Defendant's silence, and the objection was sustained.

In closing statements, the prosecutor attempted to rehabilitate Lee's mother's testimony by showing video footage of Lee's mother positively identifying Defendant as the man who shot her son within a few hours of the incident. The prosecutor also referenced the manner in which Lee's mother was questioned during cross examination, saying she was "attacked," "harassed," and "yelled at." In doing so, the prosecutor also referenced Defendant's not guilty plea. These comments occurred without objection from defense counsel and without intervention or correction from the trial judge.

At the conclusion of closing arguments, the trial court delivered pattern jury instructions about Defendant's decision not to testify, the jury evaluating a witness's credibility, evaluating testimony from witnesses who testified pursuant to an

agreement with the State for a charge reduction, first-degree murder where a deadly weapon was used, with the lesser-included of second-degree murder, first-degree burglary, with the lesser-included crimes of second-degree burglary and felonious breaking and entering, and how the jury may find the presence of an aggravating factor, if they find the crime was committed in the presence of a person under the age of eighteen.

The jury returned verdicts of guilty for second-degree murder and possession of a firearm by a convicted felon. The jury also found the presence of the aggravating factor of the presence of a minor for the second-degree murder conviction. The jury acquitted Defendant of first-degree burglary or any of its lesser-included offenses. The trial court stated the jury had convicted Defendant of a Class B1 Felony and sentenced him accordingly.

Defendant was sentenced as a prior record level III offender in the aggravated range to a minimum of 397 months and a maximum of 489 months imprisonment for his second-degree murder conviction. He was also sentenced to a consecutive minimum term of 17 months and a maximum of 30 months for his conviction of possession of a firearm by a convicted felon, which was in the presumptive range and set to run upon completion of Defendant's sentence for second-degree murder. Defendant appealed in open court.

## II.   Jurisdiction

Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. §§ 7A-27(b)(1), 15A-

1444 (2023).

### III.  Issues

Defendant asserts multiple errors at trial.  First, Defendant asserts the trial court erred by failing to intervene *ex mero motu* during the State's closing arguments. The Defendant also asserts, in the alternative, his counsel's failure to object during the State's closing arguments constitutes ineffective assistance of counsel.  Finally, Defendant asserts the trial court erred in sentencing him to a Class B1 sentence for second-degree murder because of a lack of support for such a lengthy sentence in the jury's verdicts.

### IV.  Failure to Intervene *Ex Mero Motu*

Defendant argues the trial court erred by not intervening *ex mero motu* during the State's closing argument.  In the alternative, he asserts he had received ineffective assistance of counsel for the trial counsel's failure to object during closing arguments.  As part of his ineffective assistance of counsel claim, he argues his counsel was deficient by failing to object to certain portions of the State's cross-examination and closing.

### A. Standards of Review

> The standard of review when a defendant fails to object at trial is whether the argument complained of was so grossly improper that the trial court erred in failing to intervene *ex mero motu*. "[T]he impropriety of the argument must be gross indeed in order for this Court to hold that a trial judge abused his discretion in not recognizing and correcting *ex mero motu* an argument which defense

counsel apparently did not believe was prejudicial when he heard it." In determining whether the statement was grossly improper, we must examine the context in which it was given and the circumstances to which it refers.

*State v. Trull*, 349 N.C. 428, 451, 509 S.E. 2d 178, 193 (1998) (internal citations omitted). We first review the transcript to determine if the State's closing arguments are so grossly improper to be prejudicial.

For review of Defendant's ineffective assistance of counsel claim, we apply a two-pronged analysis:

> First, the defendant must show his counsel's performance was deficient, such that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687, 80 L. Ed.2d at 693. Second, the defendant must show counsel's alleged errors prejudiced him such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 80 L. Ed.2d at 698.

*State v. Lane*, 271 N.C. App. 307, 317, 844 S.E. 2d 32, 41 (2020).

## B. Analysis

Defendant asserts the State prejudiced him during closing arguments by making references to Defendant's plea of not guilty, criticizing the manner in which Defendant's counsel had cross-examined Lee's mother, and equating his trial to the charges the State's co-defendant witness had pled guilty to. We review each component in turn for purported and prejudicial errors by the trial court before proceeding to the claim of ineffective assistance of counsel.

### 1. Reference During Closing Argument to the State's Cross-Examination of Carroll-Lee's Mother and Defendant's Not Guilty Plea

In closing, the prosecutor for the State said:

> Ladies and gentlemen of the jury, we are here because the Defendant not only refuses to accept responsibility, the consequences of his actions, we are here because he has the audacity, the audacity, to look that mother in the face, kill her son in front of her and come to court this week and say it's her fault. The audacity.
>
> Ladies and gentlemen, you heard and you saw her attacked on that stand. She was harassed. She was yelled at. A lie can shout as loud as it wants. A lie can bully. It can be loud. It can be aggressive. It can say look over here. Look over there. Maybe this. But the truth is quiet. The truth has been sitting with you this week. The truth has been sitting over there. You heard the truth when that mom told you how her son was executed in front of her. You heard the truth in her sobs. You saw the truth in her tears. And no amount of shouting will change that.

It is wholly impermissible to reference a criminal defendant's exercise of their right to remain silent during trial or closing argument. *State v. Grant*, 293 N.C. App. 457, 458, 900 S.E. 2d 408, 410 (2024) (citing N.C. Gen. Stat. § 8-54 (2023)). If the State does reference a defendant's silence, the trial court can and should take measures to cure such comments. *See id.*, 293 N.C. App. at 461, 900 S.E. 2d at 412 (citing *State v. Reid*, 334 N.C. 551, 555, 434 S.E. 2d 193, 196 (1993)).

"The prosecutor may, however, appropriately respond to comments critical of the State's investigation and witnesses made by defense counsel in closing argument in order to restore the credibility of the State's witnesses, . . . and to 'defend [the

prosecutor's] own tactics, as well as those of the investigating authorities, when challenged.'" *Trull*, 349 N.C. at 453, 509 S.E. 2d at 194 (citations omitted).

Here, the challenged portions of the State's closing argument came after Defendant had delivered his closing arguments. In those closing arguments, Defendant attacked the validity of Lee's mother's testimony. The State's closing arguments were not prejudicial comments on Defendant's execution of his right to remain silent, but could be considered instead a defense of the State's strategy and "to restore the credibility of the State's witnesses". *Id.*

### 2. *Reference to Witness' Plea Deal and Potential Misstatement of Law*

In its closing arguments, the State made the following claim regarding Terry Parker's acceptance of a plea deal:

> [T]here's a reason why Terry pled to manslaughter.
>
> Under the law if you play a role in someone getting hurt, then you're responsible even if you didn't do the hurting, and that makes sense because if a pack of wolves comes together, then they share in the kill, and we apply that through our laws as well. So Terry has made it seem like he got some sweetheart deal. What Terry pled guilty to is actually what he's legally guilty of. He didn't plead to anything that he's not guilty of. So manslaughter is a charge when you are responsible for someone's death but you didn't commit first degree murder, so that's the difference here. So what he pled to is what he is literally guilty of.

The State was explaining manslaughter, the charge Terry Parker pled guilty to, is a lesser-included charge to second-degree murder. Presuming, *arguendo*, this

was a misstatement of law, the trial court provided curative instructions to the jury about what constitutes both first-degree and second-degree murder. *Grant*, 293 N.C. App. at 461, 900 S.E. 2d at 412. Furthermore, the trial court also provided the jury with instructions regarding how to evaluate the testimony of a witness who had secured a plea deal from the State.

The jury is presumed to follow the law as provided in the instructions, and the trial court's instructions empowered the jury to evaluate the witness' credibility regardless of any purported misstatement of law. *State v. Young*, 291 N.C. 562, 573, 231 S.E.2d 577, 584 (1977) ("Ordinarily, the effect of improper argument may be removed by curative instructions by the trial court, *State v. Sparrow*, 276 N.C. 499, 173 S.E.2d 897 (1970), since it is presumed that jurors will understand and comply with the instructions of the court." (citing *State v. Long*, 280 N.C. 633, 187 S.E.2d 47 (1972))). Defendant's argument is overruled.

### 3. *Ineffective Assistance of Counsel*

The Sixth Amendment of the Constitution of the United States guarantees the right to counsel for all criminal defendants. *State v. Oglesby*, 382 N.C. 235, 242, 876 S.E. 2d 249, 256 (2022). In protecting this right, we have adopted the two-prong test of *Strickland*. *Id.* The test is as follows:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the

> deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693 (1984).

Because we hold the trial court did not err by failing to intervene *ex mero motu* during portions of the State's closing argument, we do not address whether his counsel's failure to object during those portions of the State's closing argument constituted ineffective assistance of counsel. *Id.*

We now address Defendant's IAC claim regarding the State's questioning of Det. Bradshaw. In this instance, the witness was a police detective, who had investigated the case. The State's district attorney asked:

Q: Were you present when he was arrested?

A: I was.

Q: When he was arrested did he say anything?

A: He did not.

Q: Did he make any statements?

A: He did not.

Q: Did the Defendant indicate that he wanted to talk to you at all?

A: He did not.

Q: What did he do?

A: Him turning himself in was arranged with his attorney, Mr. Sallenger, so they came to the police department at a prearranged time.

Q: Okay. So he was there with his lawyer?

A: Yes.

Q: And neither of them wished to speak to you about this matter?

A: No.

Q: At any time between when the Defendant was arrested and today, have you spoken to the Defendant?

A: No.

This line of questioning was interrupted by Defendant's counsel:

MR. SALLENGER: Objection, Your Honor. My client, under our constitution, under the Fifth and Sixth Amendments to the constitution, has an absolute right not to make a statement. That is our law. We believe that this line of questioning is attempting –

THE COURT: Objection is sustained.

Defendant asserts that defense counsel acted deficiently by raising the objection later in the line of questioning, and for not making a motion to strike the line of questioning from the record nor asking for curative instructions.

For the first prong, we evaluate whether the conduct of Defendant's trial counsel was reasonable by the norms of the profession. *State v. Todd*, 369 N.C. 707, 711, 799 S.E. 2d 834, 838 (2017). Defendant asserts that the objection in question

- 11 -

was not timely. Additionally, Defendant now asserts his trial counsel should have also moved to strike and requested curative instructions. We evaluate these assertions with a rebuttable deference to the counselor's trial strategy. *Oglesby*, 382 N.C. at 243, 876 S.E. 2d at 256.

Counsel's objection was made in the jury's presence, while the witness was still present on the witness stand. Presuming it may have been made more immediately, it was still timely. *See State v. McIver*, 285 N.C. App. 205, 211-12, 876 S.E. 2d 857, 862 (2022) (discussing preservation issues).

As to the lack of curative instruction, the record supports a conclusion this may have been a reasonable trial strategy choice. *See Strickland*, 466 U.S. at 699, 80 L. Ed. 2d at 701-02. At trial, defense counsel focused their efforts on discrediting the State's witnesses and denying Defendant had the murder weapon in his possession at the time of Lee's homicide. Defense counsel properly ceased the State's offensive line of questioning, and he may have wished to not draw further attention to the issue. These conclusions are not dispositive. Ultimately, we turn to the second prong.

Presuming Defendant's trial counsel's decision to not move to strike and ask for curative instruction was not reasonable, trial counsel's omission did not prejudice Defendant. The State provided overwhelming evidence through the testimony of two eyewitnesses to the shooting, the detective who had interviewed Lee's mother, as well as other witnesses, who had interacted with Defendant. The results of the forensic pathology were also admitted. Defendant has failed to show the properly objected-to

testimony in question without additional motions was prejudicial to award a new trial. Defendant's IAC claim lacks merit and is overruled.

## V.    The Sentence Imposed

### A.  Standard of Review

"We review *de novo* whether the sentence imposed was authorized by the jury's verdict." *State v. Lail*, 251 N.C. App. 463, 471, 795 S.E. 2d 401, 408 (2016) (internal citations omitted).

### B.  Analysis

North Carolina's statutes state Class B1 and B2 felonies are to be differentiated by the type of malice involved. N.C. Gen. Stat. § 14-17(b) (2023). This differentiation is as follows:

> Any person who commits second degree murder shall be punished as a Class B1 felon, except that a person who commits second degree murder shall be punished as a Class B2 in either of the following circumstances:
> (1) The malice necessary to prove second degree murder is based on an inherently dangerous act or omission, done in such a reckless and wanton manner as to manifest a mind utterly without regard for human life and social duty and deliberately bent on mischief. . . .

N.C. Gen. Stat. § 14-17(b) (2023).

We have held ambiguous verdicts, using the same pattern jury instruction as used in the case at bar, cannot support a class B1 sentence. *State v. Mosley*, 256 N.C. App. 148, 149, 153, 806 S.E. 2d 148, 366-67, 369 (2017). In doing so, this Court stated:

> [When] there [i]s evidence presented which would . . .
> support[] a verdict on second degree murder on more than
> one theory of malice, and because those theories support
> different levels of punishment under N.C. Gen. Stat. § 14-
> 17(b), the verdict rendered . . . [i]s ambiguous. When a
> verdict is ambiguous, neither we nor the trial court is free
> to speculate as to the basis of a jury's verdict, and the
> verdict should be construed in favor of the defendant.

*Id.* 256 N.C. App. at 153, 806 S.E. 2d at 369. In *Mosley*, we determined there was

adequate evidence presented to satisfy the two forms of malice as outlined in N.C.

Gen. Stat. § 14-17(b). *Id.* 256 N.C. App. at 153, 806 S.E. 2d at 368-69.

In the present case, there is no such evidence. The State presented substantial

evidence tending to show Defendant was in unlawful possession of a deadly weapon

and was intent on causing harm and revenge, saying afterwards, he "had to do it" for

his son. The State's case was predicated on first-degree murder, burglary, and illegal

possession of a firearm by a felon. The jury also found the aggravating factor of the

crime was committed in the presence of a person under the age of eighteen, the five-

year-old brother of the victim.

The State did not present evidence, nor did it make any alternative argument,

indicating Defendant was engaged in an inherently dangerous act or was acting

recklessly. Defense counsel did not argue Defendant was acting reckless, but instead

argued throughout the course of the trial Defendant did not have possession of a gun

when Lee was shot. Following our analysis in *Mosley*, we hold the trial court could

conclude an aggravated B1 sentence on the jury's verdict is supported under these

facts. *Id.*

## VI.   Conclusion

In the absence of an objection, the trial court did not prejudicially err by failing to intervene *ex mero motu* and interject during the State's closing argument.   We again strongly caution the State against comments on a defendant's silence, right to counsel, and assertion of his constitutional rights during closing arguments.   *Grant*, 293 N.C. App. at 458, 900 S.E. 2d at 410 (citing N.C. Gen. Stat. § 8-54 (2023)).

The trial court did not err in imposing a Class B1 sentence.   N.C. Gen. Stat. § 14-17(b) (2023).   Defendant has failed to demonstrate he received ineffective assistance of counsel at trial or prejudice.   *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693.

Defendant received a fair trial, free from prejudicial errors he preserved and argued on appeal. We find no error in the jury's verdicts or in the judgments entered thereon. *It is so ordered.*

NO ERROR.

Judges WOOD and MURRY concur.